PECK, *Appellant,* v. CHOUTEAU *et al.*

1. Practice in Supreme Court: OBJECTIONS TO EVIDENCE. The rulings of the trial court, on general objections to the evidence, such as "plaintiff objected ; objection overruled ; and plaintiff excepted," cannot be reviewed in the Supreme Court. The objections must show the specific grounds on which they are made.

2. Evidence : CROSS-EXAMINATION. The cross-examination of a witness does not go beyond the limits of legitimate inquiry, where it relates to matters brought out on the direct examination.

Peck v. Chouteau.

3. ———: PRESUMPTION IN FAVOR OF RULINGS OF TRIAL COURT. The presumption is in favor of the correctness of the rulings of the trial court, on the admission of evidence, until the contrary is made manifest from the record.

4. **Malicious Prosecution:** GENERAL REPUTATION OF PLAINTIFF: EVIDENCE. In an action for malicious prosecution, in order to disprove malice, and to show probable cause, the defendant may show the general bad reputation of the plaintiff.

5. **Witness:** PLEA OF GUILTY TO INDICTMENT: COMPETENT TO AFFECT CREDIBILITY OF. A plea of guilty to an indictment for a crime, although not followed by a judgment, is admissible in evidence, to affect the credibility of the defendant as a witness in another cause.

6. **Malicious Prosecution:** MALICE. In an action for malicious prosecution, an instruction for the defendant held proper, to the effect that mere dislike or ill-will towards one does not constitute malice, in the legal sense ; that there must be some act done by the defendant with intent to injure plaintiff, and that such act must be wrongful, and must be done without justification or excuse.

7. ———: PROBABLE CAUSE: PRIMA FACIE CASE: INSTRUCTION. The court also gave to the jury an instruction that the finding and return of the indictment against plaintiff is *prima facie* evidence of probable cause, and that, unless such *prima facie* case is overcome by evidence, either that the indictment was procured by false or fraudulent testimony, or that, notwithstanding the finding of the indictment, the defendants did not believe the plaintiff guilty of the offence for which he had been indicted, the jury will find for defendant. *Held,* That the foregoing instruction was not objectionable, when taken in connection with another given in the case, whereby the jury were properly told that probable cause must have been the belief, by defendants, of the guilt of the plaintiff, based on facts and circumstances sufficiently strong to have induced such belief in the mind of a reasonable and cautious man.

8. ———: ———: ———. The fact that one of the defendants was a member of the grand jury which preferred the indictment, does not render the above instruction vicious. That fact was a circumstance, however, which the jurors had a right to consider.

9. ———: INSTRUCTION. The court, also, properly instructed the jury that, if the connection of the defendant, who was a member of the grand jury, ended with the trial upon the indictment, and that neither he nor his co-defendant, who was his attorney, took any part in the prosecution, on the criminal information afterwards filed, and which was the basis of the second count of the petition, the jury should find for the defendants, on said second count.

10. **Malicious Prosecution, Liability of Attorney for.** Knowledge on his part, by an attorney, that his client, who institutes a suit, is actuated by malicious motives, is not sufficient to render the attorney liable, in an action for malicious prosecution. But if the attorney knows that his client is actuated by malice, and, also, that there is no cause for the prosecution, then he is liable.

11. ———. The attorney has a right to act upon such information as his client reveals to him. Nothing short of complete knowledge, on his part, that the action is groundless, and that his client is acting solely through illegal or malicious motives, will make the attorney liable in an action for malicious prosecution.

*Appeal from St. Louis City Circuit Court.*—Hon. W. H. Horner, Judge.

Affirmed.

*James J. Lindley* and *F. J. Bowman* for appellant.

(1) The indictment of witness, Engelke, some eight years before, in the United States court, should not have been admitted in evidence. It was not the record of the conviction of an infamous crime; it was, at best, but a method of proving a specific charge. *Seymour v. Farrell*, 51 Mo. 97; *State v. Breeden*, 58 Mo. 507; *State v. Shields*, 13 Mo. 236. Proof of specific acts are not admissible to impeach the character of a witness. *Conly v. Meeker*, 83 N. Y. 618. (2) Indictment and sworn charges before a magistrate are not admissible to discredit a witness, when he is not shown to have been convicted thereon. *People v. Gay*, 7 N. Y. 378; *Jackson v. Osborn*, 2 Wend. 555. (3) It was error to permit the witness, Dyer, to testify in contradiction of the evidence of Engelke, as to the whiskey indictments. The court should not have permitted Engelke to be contradicted on a collateral question asked by defendants. *Muller v. St. Louis*, 5 Mo. App. 402. (4) It was erroneous for the court to instruct the jury that actual ill-will, or dislike, by defendants towards plaintiff, is not malice, in its legal sense. 2 Greenl. on Evid. [10 Ed.] p. 403. (5) Instruc-

tion numbered two, for defendants, was erroneous.  The finding of the indictment was wholly, or partly, the work of defendant, Chouteau, and the fact of the finding cannot be evidence in his behalf; if so, he can make evidence for himself, and by the very instrument concocted to do so much wrong and injury to plaintiff. (6) Defendants' instruction, numbered three, should not have been given.  A party, having wickedly and maliciously caused and procured a person's arrest, cannot relieve himself from responsibility by subsequently withdrawing from the prosecution of the false charge he caused to be preferred, or by directing his attorney to do so.  (7) It was error for the court to refuse plaintiff's instruction, numbered one.  The law is settled that if an attorney, dishonestly and for some purpose of his own, with some sinister view of his own, prefers the indictment, lodges the information, or urges the prosecution, he is liable to the plaintiff, and his employment by his client, either general or special, will not shield him.

*S. Hermann* and *G. A. Madill* for respondents.

(1)  When a party complains of error in the ruling of the trial court, his bill of exceptions should not only show the specific objections made, but the fact in evidence, and its connection with what precedes and follows it in the case, should be so fully and clearly brought out, and preserved in the bill, as to make it obvious, without strain or doubtful inference, that the ruling was erroneous; and, unless this is done, this court will affirm the ruling of the court below.  *McMillan v. State,* 13 Mo. 33; *Douglas v. Stevens,* 18 Mo. 368; *Houston v. Lane,* 39 Mo. 498; *Holmes v. Braidwood,* 82 Mo. 613; *State v. Tucker,* 84 Mo. 26; *State v. Brown,* 75 Mo. 317. (2) In actions for malicious prosecution, for the purpose of rebutting malice and establishing the existence of

probable cause, defendant may put in evidence any facts which tend to establish the guilt of plaintiff, whether he knew them of his own knowledge, or whether they were communicated to him by others, or, even, by public rumor; provided he can show that he knew, or learned, the facts before engaging in the prosecution, and that he believed them. Such testimony, in this class of actions, is original evidence, and not hearsay. *Barron v. Mason*, 31 Vt. 189 ; 2 Greenl. on Evid. [Redf. Ed.] sec. 454; *Bacon v. Towne*, 4 Cush. 217; *Pullen v. Glidden*, 68 Me. 563 ; *Forshay v. Ferguson*, 2 Denio, 617 ; *Hitchcock v. North*, 5 Rob. [La.] 328 ; 3 Suth. on Dam. 708 ; *Israel v. Brooks*, 23 Ill. 577 ; *Bush v. Prosser*, 11 N. Y. 348, 356, 360, 367 ; *Bisbey v. Shaw*, 12 N. Y. 70; *Kennedy v. Holborn*, 16 Wis. 458. (3) Malice, in actions for malicious prosecution, is defined as " the want of a sincere belief of the plaintiff's guilt of the crime for which the prosecution was instituted." Malice, in this connection, may also be defined as "a wrongful act, done intentionally, without legal justification or excuse." *Barron v. Mason, supra ; Sharpe v. Johnston*, 59 Mo. 558. (4) In the cross-examination of a witness, he may be asked any questions which tend to test his accuracy, veracity, or credibility ; or, to shake his credibility, by showing his character. He may be compelled to answer any such question, however irrelevant to the facts in issue, and however disgraceful the answer may be to himself. The exceptions to the above rule are not in point here. Stephens' Dig. Evid. 123 ; *Muller v. St. Louis*, 5 Mo. App. 401 ; s. c., 73 Mo. 243. (5) In order to make an attorney liable, in an action for malicious prosecution, it must not only appear that he brought an action which was, in fact, groundless ; it must further appear that it was agreed, between the client and the attorney, to bring an action, known to both to be groundless, and to bring it as such. *Burnap v. Marsh*,

13 Ill. 538; *Becknell v. Darion*, 16 Pick. 478; *Campbell v. Brown*, 2 Woods, 350.

BLACK, J.—This was an action for malicious prosecution, in which Charles P. Chouteau, John M. Glover, and Joseph H. Livingston were made defendants. The cause was dismissed as to Livingston. Verdict and judgment for the defendants, from which the plaintiff appealed.

The substantial averments of the first count are, that, on the eighteenth of July, 1882, the plaintiff was indicted upon a charge of fraudulent conspiracy with Engelke and Barrett to defraud Alice Livingston and others interested in a corporation known as the Windsor Hotel Company; that he was arrested on the twenty-sixth of July, 1882, and tried and acquitted on the twenty-first of December, 1882, in the court of criminal correction of St. Louis; that Chouteau was a member of the grand jury which returned the indictment, Livingston a witnesss, upon whose false statements the indictment was procured, and Glover assisted in its procurement; that the defendants, maliciously and without probable cause, procured the indictment and caused the plaintiff to be arrested and prosecuted thereunder. The second count, omitting the various charges of malice and want of probable cause, states that defendants procured the arrest of the plaintiff on the twenty-second of December, 1882, upon a false charge of conspiring to defraud Alice Livingston; that this charge was withdrawn, on the fifteenth of January, 1883, but before it was withdrawn, and on the same day, another one was lodged against him, upon which he was arrested; that he was tried in the same court, acquitted, and discharged on the sixteenth of March, 1883.

The answer of Chouteau is a general denial, with the averment that, at and prior to the alleged grievances the general reputation of the plaintiff for honesty and

integrity was bad. Glover made a like answer, with the additional averment that, whatever he did was done as a duly enrolled and practicing attorney, and not otherwise. Very little of the evidence offered on the trial, which was hotly contested, lasting for at least two weeks, is preserved. The record recites that plaintiff offered evidence tending to prove the allegations of the petition, and there was evidence tending to sustain the issues on behalf of the defendants, and to disprove the averments of the petition. The records from the court of criminal correction are in evidence, and they show that the plaintiff was arrested, tried, and acquitted on the indictment and on the information, as stated in the petition. They show, however, that Barrett and Bernard H. Engelke were also included in the same prosecutions with plaintiff, and were also acquitted.

1. Various errors are assigned in the admission of evidence over the objections of plaintiff. And, first, in the cross-examination of Engelke, and the direct examination of Dyer, a witness called by the defendants, general objections were made by the plaintiff, of which the following will serve as an example: "Counsel for the plaintiff objected; objection overruled, and plaintiff excepted." The ruling of the trial court on such general objections cannot be reviewed here. The objections must show the specific grounds on which they are made: *Shelton v. Durham*, 76 Mo. 436. The rule has been so often asserted and well understood that there can be no hardship in its enforcement. Unless adhered to with rigor, we must reverse causes upon points of evidence not called to the attention of the trial court, and often not intended to be raised on the trial at all. The various objections of the character before noted need not be specially mentioned; what is here said will suffice as to all of them.

2. Again, the bill of exceptions states that Bernard H. Engelke, a witness for the plaintiff, and one of the

persons named in the indictment and information, was fully examined as to all the matters relating to the controversy, and as to the circumstances connected with making the alleged fraudulent loan ; that he testified that the money was paid to the hotel company, and to other material facts in the case ; that, on cross-examination by defendant, he testified as follows : "Did you ever before decline a proposition to turn state's evidence and betray your friends ?" The plaintiff objected on the ground of immateriality ; the objection being overruled, he excepted, and the witness answered : "I never had such a proposition made to me by any man until this offer." The question and the answer both plainly indicate that something had been said previously, in the examination, in respect of a proposition to turn state's evidence. Whether in the direct or cross-examination is not stated ; but as the bill of exceptions is made out, it does not show any previous cross-examination, and the only inference is, that it was a matter brought out in the direct examination. That being so, the cross-examination was not beyond the bounds of legitimate inquiry. Before a judgment can or will be reversed, because of the admission of immaterial evidence, the record must not only show that objections were made and exceptions taken, but it must clearly appear that the evidence was immaterial. The presumption is in favor of the correctness of the ruling of the trial court, until the contrary is made manifest from the record. *McMillen v. State*, 13 Mo. 33 ; *Holmes v. Braidwood*, 82 Mo. 613 ; *State v. Tucker*, 84 Mo. 26.

3. The same witness, in further cross-examination, stated that no proposition to turn state's evidence was made to him in certain prosecutions instituted by the United States ; that he testified on those trials ; that in one of those cases he pleaded guilty to a misdemeanor, not to a felony. The indictment being shown to him, he

was asked if he pleaded guilty to it, and he said he did, but at the same time, counsel for the plaintiff objected to any further inquiry in that behalf until the indictment should be put in evidence. It was then offered, when an objection was made on the ground that the record showed Mr. Engelke's acquittal and discharge. The record was then read; to which exceptions were taken. The record shows that Engelke and his partner in business were, seven or eight years before this trial, indicted on seven counts for feloniously removing distilled spirits on which the tax had not been paid, for the purpose of defrauding the government; that he pleaded not guilty; that, four months thereafter, he pleaded guilty as to three of the counts, and some six months later, by leave of the court, he withdrew the plea of guilty and the prosecution was dismissed as to him.

It is strongly urged by the defendants that, as Mr. Glover, one of the defendants, and counsel for the other, knew of these whiskey prosecutions, and that Engelke had pleaded guilty to a charge of conspiring to defraud the government, the circumstance would, naturally, and of right, lead him, and through him, his client, to believe that Engelke would be likely to engage in another conspiracy to defraud. As both malice and want of probable cause are essential elements to be made out by the plaintiff in a malicious prosecution, evidence tending to disprove malice or show probable cause is competent on behalf of the defendant. The defendant may show the general bad reputation of the plaintiff; and authorities are cited to show that the defendant may offer evidence to the effect that the plaintiff had been guilty of other similar offences about the same time, knowledge of which had come to the defendant before he instituted the prosecution. 3 Suth. on Dam. 708, and cases cited by counsel for defendant. But, while Peck and Engelke were held jointly prosecuted, Peck was not a party to the whiskey prosecutions, and it is not claimed that he

had anything to do with them. Even if the evidence was competent as against Engelke in a suit by him, which we do not affirm, still the fact that Engelke had been engaged in a conspiracy to defraud the government, six or seven years before, is no evidence showing, or tending to show, that Peck would be likely to be guilty of such an offence as that with which he is charged. The reception of the evidence cannot be justified on the ground that it tends to disprove malice or show probable cause.

4. The indictment, and the proceedings had thereon, if admissible for any purpose, could only be received to affect the credit of the witness. When it is proposed to exclude the witness, because he has been convicted of some infamous crime at the common law, or made so by statute, a verdict of a jury or plea of guilty is not suf-ficient. It is the judgment, and that only, which is evidence of the party's guilt, for the purpose of render-ing him incompetent to testify. Whart. Evid. [2 Ed.] sec. 567 ; 1 Greenl. Evid. [14 Ed.] sec. 375. With us, a conviction of a crime no longer renders the defendant incompetent to testify, but it may be read as affecting the credit of the witness. Mr. Greenleaf says, at the section last cited : "If the guilt of the party should be shown by oral evidence, and even by his own admission (though in neither of these modes can it be proved, if the evidence be objected to), or, by his plea of guilty which has not been followed by a judgment, the proof does not go to the competency of the witness, however it may affect his credibility." The intimation, if not the statement, here made is, that a plea of guilty may be shown, as affecting the credibility of the witness. The above quotation was approvingly cited in *State v. Rockett*, 87 Mo. 668. In that case no question was made but that a conviction for a misdemeanor might be read, as going to the credit of the witness. While a plea of *nolo contendere* in a criminal case is an admission only

for that trial, a plea of guilty, in a criminal case, may, in a civil suit, involving the same subject matter, be used as an admission. Whart. Evid., sec. 783 ; 1 Greenl. Evid., sec. 179. Here there was a solemn plea of guilty, made after due time for deliberation. If the verdict of a jury, followed by a judgment, will affect the credit of a witness, no reason is seen why this solemn admission should not have the same effect. If it is the commission of the crime that affects the character, then the confession is certainly of equal weight with the verdict and judgment. Though the government saw fit and proper to dismiss the prosecution without entering a judgment on the plea, still we hold that the record was properly received in evidence. There are other objections to the evidence drawn from this witness, but they are subordinate to the question just determined, and need not, therefore, be considered.

5. For the plaintiff the court instructed the jury that malice means a wrongful act done intentionally, without legal justification or excuse. This definition is taken from *Sharpe v. Johnston*, 59 Mo. 557, that is to say, from instructions which were given in that case. The plaintiff cannot, and, of course, does not, complain of the definition, for it was given at his request, but he does object to an instruction given upon the same subject at the request of the defendant, which is as follows :

"Mere dislike or ill-will towards one by another does not constitute malice in the legal sense. There must be some act done by the defendant, with intent to injure the plaintiff, and such act must be wrongful, and must be done without legal justification or excuse ; and unless," etc.

We do not see that this instruction modifies or weakens the force of the definition previously given. It evidently was designed to, and does, assert the proposition that dislike or ill-will, so long as it remains a feeling

only, unaccompanied with any act, does not constitute malice in the sense in which the word is used in the instructions; that such feeling must be embodied in some act. That is what is meant by plaintiff's instruction, when it said, malice means a *wrongful act*, done intentionally, etc. Cooley says legal malice is made out by showing that the proceeding was instituted from any improper or wrongful motive, and it is not essential that actual malevolence or corrupt design be shown. Cooley on Torts, 185. Substantially, the same thing is said in *Alexander v. Harrison*, 38 Mo. 259, and in *Barron v. Mason*, 31 Vt. 189. If, then, the instruction had the effect to withdraw from the jury the motives with which the defendants instituted the prosecution, it could not be sustained, but we do not see that it could have had that effect. Other instructions show that the purpose of the defendants in commencing and carrying on the prosecutions was kept prominently before the jury.

6. Objection is also made to an instruction, which, in substance, is, that the finding and return of the indictment is *prima facie* evidence of probable cause, "and unless this proof is overcome by evidence either that said indictment was procured by false or fraudulent testimony, or that, notwithstanding the finding of said indictment, said defendants did not believe the plaintiff to be guilty of the offence for which he had been indicted, the jury will find for the said defendant on the first count." This instruction has the sanction of at least two former rulings of this court. *Sharpe v. Johnston*, 76 Mo. 670; *Van Sickle v. Brown*, 68 Mo. 627. The statement that the finding and return of the indictment is *prima facie* evidence of probable cause is no more than to say the burden of proof to show want of probable cause is upon the plaintiff. The latter part of the instruction is to be taken in connection with another, whereby the jury were properly told that probable cause must have been the belief, by defendants, of the guilt of

the plaintiff, based on facts and circumstances suffi-ciently strong to have induced such belief in the mind of a reasonable and cautious man. The instruction, considered in the light of the one just alluded to, is not objectionable. It is to be observed the instruction under consideration relates alone to the first count. That Chouteau was a member of the grand jury does not make the instruction vicious. That fact was a circum-stance, however, which the jurors had a right to con-sider.

7. The sixth instruction for the defendants, and to which objection is made, does not more than say that if Chouteau's connection with the prosecution ended with the trial upon the indictment, and that neither he, nor Glover for him, took any part in the prosecution upon the information, then the finding should be for him on the second count. This is clearly its only fair meaning and it embodies a correct proposition of law.

8. Finally, as to the plaintiff's refused instructions. These relate to Glover only as the attorney of Chouteau. The fact that the client is actuated by malice and the attorney knows it cannot make the attorney liable, for malice alone would not even make out a case against the client. If there is probable cause for the prosecution then the suit for malicious prosecution must fail, though malice be clearly shown; and it must follow that knowl-edge on his part, by the attorney, that the client is actuated by malicious motives, is not sufficient to make the attorney liable. But if the attorney knows that the client is actuated by malice, and also knows that there is no cause for the prosecution, the dictates of common honesty require that he also should be made accountable. As said in *Burnap v. Marsh*, 13 Ill. 538: "Where the client will assume to dictate a prosecution upon his own responsibility, the attorney may well be justified in representing him so long as he believes his client to be asserting what he supposes are his rights, and is not

making use of him to satisfy his malice. But when an attorney submits to be made the instrument of prosecuting and imprisoning a party, against whom he knows his client has no just claim or cause of arrest, and that the plaintiff is actuated by illegal or malicious motives, he is morally and legally just as much liable as if he were prompted by his own malice against the injured party." The rule is more favorably stated for the defendant in *Bicknell v. Dorion*, 16 Pick. 478, where the following conclusion is reached: "In order, therefore, to charge an attorney upon this ground [a conspiracy to bring a groundless suit] it must not only appear that there was an agreement to bring an action which was in fact groundless, and which the attorney supposed to be groundless, but that it was agreed to bring an action understood by both parties to be groundless and brought as such." We are not prepared to go further than is indicated in the extract from *Burnap v. Marsh*, *supra*, and think it asserts a salutary and reasonable rule. Now, in this case, it is to be observed that, in so far as it can be said, in any view of the case, that Mr. Glover acted outside of, or beyond, his professional capacity, the instructions given are full and favorable to the plaintiff, and no other instruction should have been given upon that branch of the case. The instructions do not predicate a right to recover upon the fact that Mr. Glover knew that the action was groundless, and that he knew that Chouteau acted in the matter from malicious motives; but they say that if he knew, " or, by the exercise of reasonable diligence, might have known, that there were no facts sufficient to constitute probable cause," etc. The attorney has a right to advise and act upon the facts which he gets from his client, and it is not his duty to go elsewhere for information. According to these instructions an attorney could not, with safety, advise the arrest of any criminal until he has exhausted reasonable diligence in the search for

information as to whether a crime had been committed. He would stand on no other or different ground from that of the client. The statement of such a proposition is enough to condemn it. We state again that the attorney has a right to advise and act upon such information as the client reveals to him. Nothing short of complete knowledge on the part of the attorney, that the action is groundless, and that the client is acting solely through illegal or malicious motives, should make him liable in these actions. As said by Mr. Justice Bradley in *Campbell v. Brown*, 2 Woods, 350: "If attorneys cannot act and advise freely and without constant fear of being harassed by suits and actions at law, parties could not obtain their legal rights."

The judgment of the circuit court is affirmed, in which all concur.