BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1912.

## DAVID T. PROCTOR, Respondent, v. A. G. SUTHERLAND, Appellant.

Kansas City Court of Appeals, March 4, 1912.

MASTER AND SERVANT: Negligence: Defective Appliances. Plaintiff sued for damages for injuries received while assisting in moving an old engine from the interior of a building out into the yards where it was to be placed on a pile of "I" beams. While lifting the engine with the aid of a derrick to put one end of the skids under it, a defective guy cable parted, the derrick careened in the opposite direction and thereby slackened another guy cable which sagged down and struck plaintiff on the head. *Held*, that upon a consideration of all the evidence, the demurrer to the evidence was properly overruled.

Appeal from Jackson Circuit Court.—*Hon. R. B. Middlebrook*, Judge.

AFFIRMED (*conditionally*).

*Warner, Dean, McLeod & Timmonds* for appellant.

*R. L. Fissette* and *Bird & Pope* for respondent.

JOHNSON, J.—This is a personal injury case that has been here on two former appeals. The first trial resulted in a verdict and judgment for plaintiff for $2500. Defendant appealed and we held in our opinion, written by BROADDUS, P. J., that the evidence of plaintiff sustained the cause of action alleged in his petition, but we reversed the judgment and remanded the case for another trial because of prejudicial errors committed against defendant at the trial. [129 Mo. App. 431.] At the second trial the jury found for plaintiff and assessed his damages at two thousand dollars, but the circuit judge granted defendant a new trial on the ground that his demurrer to the evidence should have been given. The cause was submitted to the jury at the third trial and a verdict was returned for plaintiff for seven thousand dollars. On the hearing of the motion for a new trial the court held the verdict excessive and to meet this view, plaintiff entered a remittitur of twenty-five hundred dollars, whereupon the motion for a new trial was overruled and judgment for plaintiff in the sum of forty-five hundred dollars was rendered. Defendant appealed, and in an opinion written by ELLISON, J., we again held that the demurrer to the evidence had been properly overruled but again remanded the cause on account of errors committed against defendant at the trial.

We observed in the opinion that a judgment of forty-five hundred dollars was far in excess of the damages plaintiff's own evidence showed he had sustained in consequence of the injury. The last trial resulted in a verdict for plaintiff for five thousand dollars. The circuit court, deeming this excessive, plaintiff filed a remittitur of one thousand dollars and the court overruled the motion for a new trial and entered judgment for four thousand dollars. Defendant appealed.

Three propositions are urged by counsel for defendant, viz., first, that the evidence fails to disclose a cause of action and, therefore, that the jury should have been directed to return a verdict for defendant; second, that error was committed in the admission of certain evidence offered by plaintiff and, third, that the judgment is excessive.

At the time of his injury plaintiff was employed as a workman at the foundry and machine shops of defendant and was a member of a gang engaged under the direction of a foreman in moving an old engine from the interior of a building out into the yards where it was to be placed on a pile of "I" beams. The engine had been stripped of all its detachable parts down to its solid frame, approximately was eight or nine feet long, two to two and one-half feet wide and eighteen inches to two feet high and weighed about 4500 pounds. It was loaded on a push car and pushed along a railway that ran from the inside of the building out into the yards and alongside the pile of beams on which it was to be set. Witnesses variously estimate the distance of the pile of beams from the car where it was stopped at from two to eight feet and some of the witnesses say the top of the pile was about the same height as the top of the car while others say it was a few inches higher. The plan of unloading adopted by the foreman was to use two "I" beams for skids on which to shove the engine from the car to the pile of beams. A small derrick stood on the east side of the track near the pile and under the orders of the foreman was used to life the engine for the purposes of putting one end of the skids under it. The guy cables of the derrick were old and so worn and rusted that it was not safe to attempt to lift the engine with the derrick and swing it over to the pile. The foreman had knowledge of the limitations of the derrick and did not purpose to use it except for lifting a part of the load and, consequently, devised the

method to which we have referred of sliding the engine over on the skids with the aid of pinch bars. Below is a cut of the engine which we reproduce to elucidate our statement of the facts of the case.

APPROX - 2'-6" x 8'-6" x 1'-8"

The end with the cylinder on was heavier than the other and hereafter shall be designated as the front end. The injury to plaintiff occurred during the temporary absence of the foreman who went into the building to get the pinch bars which he intended the men to use in sliding the load along the skids. After he left the scene the men caused the front end of the load to be lifted by the derrick higher than it had been lifted before, intending to push it along the skids without waiting for the pinch bars and while thus engaged a defective guy cable parted, the derrick careened in the opposite direction and thereby slackened another guy cable which sagged down and struck plaintiff on the head, inflicting the injuries of which he complains. Plaintiff contends that negligence of defendant in using a defective derrick was the cause of his injury. Defendant's position is that disobedience by plaintiff and his fellow-servants was the cause. Plantiff's answer to this defense is, first, that

he and his fellow-servants were not disobeying but were carrying out the orders of the foreman and, second, that if they were disobedient, that wrong had no place in the chain of causal events that operated to produce the injury.

The foreman of the men, Louis H. Althoff, introduced as a witness by defendant, testified that the engine had been placed lengthwise on the top of the push car so that when the car was stopped alongside the pile of beams the engine was parallel to the pile and was on the far side of the car. First, he had the engine belted or looped with chains. The hook at the end of the lifting cable of the derrick was to be fastened into these belts to lift first one end of the load and then the other for the purpose of separately sliding one end of the skids under the load. The skids were placed at right angles to the broadside of the engine and their other end rested on top of the pile of beams. One skid was placed just back of the cylinder, the other near the rear end of the engine. The skids which, as stated, were ''I'' beams, were laid on their sides in order that the pinch bars might be worked in their grooves. It was the design of the foreman to slide the load sidewise for, in so doing, more pinch bars could be employed by using the side of the car as a pivot and the task of turning the load half around would be avoided. Further reference to the lifting chains belted around the engine is necessary to a proper understanding of the facts. The foreman states that two of these belts, one single and the other double, were placed around the load. The single belt was nearest the front end and was used in raising that end a few inches—just high enough to admit the insertion of the skid. The double belt or ''cradle'' as the witness calls it, had one loop under the shoulder of the engine and another under the rear end and the derrick hook could be attached to either loop. As we understand these devices the single belt was far

in front of the engine's center of gravity, the front loop of the cradle was just in front of that center and the rear loop far behind it, so that in lifting by the single belt the front end only of the load would be hoisted; in lifting by the rear loop the rear end of the load would be raised, and in lifting by the front loop of the cradle the front end would be raised about two feet before the rear end would leave the car and the entire load be supported by the derrick.

The foreman states that when he started for the pinch bars the skids had been placed by lifting first one end and then the other of the load; that the derdick hook had been detached; that he had no intention of using the derrick again; that he had told the men the derrick was unsafe and must not be used to lift the whole load; that during the operation of placing the skids in position, plaintiff had started to put the derick hook in the middle belt and he had stopped plaintiff saying "Don't catch it there. You don't want to lift the whole thing," and that when he went to get the pinch bars he left the men standing idle and expected them to remain idle until he returned.

There is other evidence—some of it appearing in the testimony of witnesses introduced by plaintiff—to the effect that the men willfully disobeyed the order of the foreman in lifting by the middle loop almost the entire load with the derrick, and this was prompted by the idea that by so doing they could push the whole load over to the pile without the pinch bars and have the work done on the return of the foreman.

If the evidence to which we have referred were all of the evidence in the record, we would not hesitate in reaching the conclusion that such disobedience of the master's orders should be regarded as the sole cause of the injury, since it is plain that had the orders been obeyed the injury would not have occurred. Indeed, the use of the derrick at all after the foreman had cast it aside as of no further use in the operation

of moving the engine and had temporarily withdrawn, leaving the men under orders to remain idle until his return, was the purely voluntary act of plaintiff and his fellow servants, for the consequences of which he and they alone were responsible. It is the duty of the servant to obey his master's orders and if his disobedience causes or contributes to his injury he can have no cause of action against his master.

But we find in the record substantial evidence contradicting the foreman's version of the occurrance and now we shall refer to the evidence most favorable to the contention of plaintiff. He states that the engine was laid diagonally on the top of the car; that the foreman so directed the work of unloading; that the engine was to be run along the skid lengthwise and head on; that the skids were shoved under the front end as it was lifted by the derrick and that the foreman left before the weight of the load had been shifted to the skids and, therefore, while the operation of lifting the end higher and higher and shoving the skids under was going on. Further he states that he did not hear the forman say the derrick should not be used to lift the entire load; did not know pinch bars were to be used, and supposed when the foreman left he had gone for good. In these last statement he is entirely unsupported by any other evidence and we are going to disregard them in making up the hypothesis of facts from which we draw the inference that plaintiff was entitled to go to the jury.

There is substantial evidence tending to show that the derrick hook was attached to the load at a point far in front of its center of gravity and was holding the front end of the load suspended when the foreman left to get the pinch bars; that the men kept on with their work, having no order from the foreman to the contrary, and that the only direction he had given was not to lift the whole load with the derrick and the indefinite oder not to lift it too high. If these are

the true facts of the case the jury were entitled to the belief that the men were not disobeying but were complying with the orders of the foreman in raising the front end of the load a few inches higher in order to get the skids under far enough and that the negligence of the foreman in ordering them to work with a defective and dangerous derrick was the proximate cause of the injury.

In the conceded physical facts there is much to sustain plaintiff's hypothesis. In the first place, the question arises on the foreman's version, why did he go after the pinch bars instead of sending a servant after them, if he expected the men to remain idle? Again, on the theory that the men were to continue the work in his absence, what could they do except to go on with the task of putting the skids under the load which called for lifting its front end higher? And, further, if the derrick hook was attached to the front loop and, therefore, was lifting the front end of the load, how could the further elevation of that end have increased the strain on the derrick? Obviously, as we observed in our first opinion in this case, lifting up one end of the engine would finally result in throwing its whole weight on its bottom end and, therefore, the higher the free end was lifted, the less the strain on the derrick. And still further, if the foreman, when he left did not intend to use the derrick again, why was the middle belt or loop put around the load? It had not been used, according to his statement, and there was no necessity for more than two single belts, one at each end, if he did not purpose to lift a substantial part of the entire load by the middle band to facilitate the operation of pinching and pushing the engine on the skids. Clearly lifting at either end would be of no avail as that process would cause the bottom end to offer greater resistance to lateral force than the load otherwise would oppose, but lifting by the middle band would distribute its

power over the whole load and thereby assist the lateral force applied by the pinch bars and by pushing. All these considerations and others not so striking which we have not mentioned, impel us to hold that the plaintiff has shown by substantial and credible evidence that his injury was not referable to any disobedience of orders but was caused by negligence of defendant in failing to exercise reasonable care to provide him a reasonably safe derrick with which to work.

The demurrer to the evidence was properly overruled.

We shall dispose of defendant's second proposition with the observation that the testimony in question related solely to a fact about which there is no dispute and, therefore, that the only error in admitting the evidence consisted of an inquiry into matters not pertaining to a controverted issue of fact. In the present instance the inquiry could not have misled the jury and, therefore, the error should be deemed harmless.

Finally on the question of excessive verdict we still adhere to the view we expressed in our opinion on the second appeal and hold that a judgment of four thousand dollars is in excess of the maximum limit of plaintiff's damages as portrayed by his evidence. We think that limit is three thousand dollars and on condition that within ten days from the filing of this opinion a remittitur of one thousand dollars be entered by plaintiff, the jurgment will be affirmed. Otherwise it will be reversed and the cause remanded. All concur.