JOHN GRZESKOVIAK, A Minor, by JOSEPH GRZESKOVIAK, His Next Friend, Appellant, v. UNION ELECTRIC LIGHT & POWER COM-PANY.

Division One, June 8, 1923.

1. **EXCESSIVE VERDICT: New Trial Granted: Abuse of Discretion: Remittitur.** Where the trial court found as a fact that the verdict for plaintiff was excessive, and granted a new trial, not on the ground of excessiveness of the verdict, but because of error in instructions given, this finding of the court that the verdict was excessive is to be taken as true upon plaintiff's appeal, unless the evidence shows the contrary at least clearly enough to make out an abuse of discretion. Nor can the appellate court, were this the only valid ground for a new trial, order a *remittitur.*

2. **NEW TRIAL GRANTED: Appellate Practice.** Upon an appeal by plaintiff from an order granting defendant a new trial in an action at law, the judgment of the appellate court must either order the reinstatement of the verdict and judgment thereon, or affirm the trial court's order and remand for the new trial which has been ordered.

Appeal from St. Louis City Circuit Court.—*Hon. Vital W. Garesche,* Judge.

AFFIRMED.

*William L. Bohnenkamp* and *Watts, Gentry & Lee* for appellant.

(1)   The case made by the plaintiff's evidence clearly entitled him to have it submitted to the jury.   (a) The allegation of negligent failure to·maintain proper insulation was conclusively proven by proof of escape of a dangerous current of electricity from defendant's wires.   Geismann v. Mo. Elec. Co., 173 Mo. 654; Von Treba v. Gas Light Co., 209 Mo. 648; Sudmeyer v. United Rys. Co., 227 S. W. 64; Snyder v. Wagner Elec. Mfg. Co., 223 S. W. 916.   (b)   A prima-facie case of negligence is made by such a showing without proof of actual or constructive knowledge on the part of the defendant of the dangerous condition prior to the escape of the electricity.   Gannon v. Laclede Gas Light Co., 145 Mo. 502; Trout v. Gas Light Co., 151 Mo. App. 207, 160 Mo. App. 604.   (c)   All the proof showed that there was no other carrier of electricity whose wires were so situated that the current which injured plaintiff could have come from them.   Proof as to where the current came from may be circumstantial as well as direct, just as any other fact may be shown by circumstantial evidence. Book v. Mo. Public Utilities Co., 242 S. W. 433; Burns v. Railroad, 176 Mo. App. 331.   (d)   Ownership of defendant's wires may be established, as it was in this case, by showing that persons were supplied by defendant with electric light from the wires from which the escaping current came.   Davenport v. Elec. Co., 242 Mo. 111.   (e) While defendant was not obliged to anticipate that the exact injury which occurred would result from its negli gence, it was bound to take necessary precautions to avoid the escape of its current, where it could be reasonably foreseen that somebody might be injured in some manner if its electricity escaped.   Hudson v. Union Elec. L. & P. Co., 234 S. W. 869; Hickman v. Union Elec. L. & P. Co., 226 S. W. 570; Johnson v. K. C. Elec. Light Co., 232 S. W. 1098; Washburn v. Laclede Gas Light Co., 214 S. W. 414, 223 S. W. 725; Williams v. Gas & Elec. Co , 274 Mo. 1; Wilhite v. Huntsville, 167 Mo. App. 155; Davis v Hospital, 196 S. W. 108; Thompson v. City of Slater, 193 S. W. 971.   (f)   The defendant was obliged to take

notice of the fact that in this climate violent storms frequently occur and that wires are broken and blown down by such storms, and that, therefore, the Kinloch telephone wire might be blown down. Wilhite v. City of Huntsville, 167 Mo. App. 155. (g) It was not necessary to show that the Kinloch telephone wire got its current by coming into direct contact with defendant's electric light wire. So long as the current could be traced back to defendant's wire, it mattered not whether the current passed through air, water, wood, steel, wire, or other substance, in being conducted into the Kinloch wire. Vessels v. Light & Power Co., 219 S. W. 80; Campbell v. United Rys. Co., 243 Mo. 141; Downs v. M. & K. Tel. Co., 161 Mo. App. 274; Hollis v. K. C. L. & P. Co., 224 S. W. 158; Kelley v. Higginsville, 185 Mo App. 85. (h) The mere fact that the Kinloch Telephone Company might also be charged with negligence and jointly held with defendant, if joined as a co-defendant, in no way excuses the defendant or prevents the plaintiff from being entitled to a judgment against defendant. Harrison v. K. C. Elec. Co., 195 Mo. 606; Hickman v. Union Elec. L. & P. Co., 226 S. W. 570; Thompson v. City of Slater, 193 S. W. 975. (2) Instruction number 1, given by the court at the request of the plaintiff (the giving of which was assigned by the court as one of its reasons for granting a new trial), was a perfectly correct instruction. This instruction authorized the jury to find for plaintiff if they found the facts therein set forth, unless they further found from the evidence that the defendant could not have prevented the escape of such electric current by the exercise of the highest degree of care. In other words, the instruction invoked the doctrine of *res ipsa loquitur*. This doctrine is applicable in a case where negligent failure to properly insulate is charged and there is proof of escape of electricity from defendant's wire. Geismann v. Mo. Elec. Co., 173 Mo. 654; Von Treba v. Gas Light Co., 209 Mo. 648; Sudmeyer v. United Rys. Co., 228 S. W. 64. The plaintiff was not deprived of the benefit of the rule requiring the defendant to

exercise the highest degree of care by the allegation in plaintiff's petition to the effect that the physical surroundings—that is, the location of its wire and the location of the Kinloch telephone wire, and the danger of injury to the public if a dangerous current of electricity should be permitted to escape from defendant's wire— were known to defendant or could have been known to it by the exercise of ordinary care. The use of the term "ordinary care" in the petition refers solely to knowledge on the part of the defendant of the physical surroundings. Plaintiff's right of recovery was based on negligent failure to insulate and not on failure to know the physical surroundings. Therefore, the use of the term "ordinary care" had no reference to the negligent act, to-wit: failure to insulate, on which plaintiff's right of recovery is based. The duty with reference to insulation was fixed by law requiring it to exercise the highest degree of care. Therefore, there was no conflict between the instruction above set forth and the petition, and the giving of the instruction afforded no ground for granting defendant a new trial. (3) The refusal of defendant's refused instruction numbered 5 did not constitute error, and, therefore, the granting of a new trial on that ground by the trial court was erroneous. The instruction was properly refused because erroneous in the following particulars: (a) It excused the defendant, unless it could have known, by the exercise of reasonable care, of the contact of the telephone wire with defendant's wire. "Reasonable care" means "ordinary care." 29 Cyc. 427, note 74; Spaulding v. Metropolitan Street Ry., 129 Mo. App. 613; Helfenstein v. Medart, 136 Mo. 595, 608. A transmitter of electricity does not discharge its duty by merely exercising ordinary care or reasonable care, which is the same thing. Its duty is to exercise the highest degree of care. Campbell v. United Rys., 243 Mo. 152; Geismann v. Mo. Elec. Co., 173 Mo. 654; Von Treba v. Gas Light Co., 209 Mo. 659; Warren v. M. & K. Tel. Co., 196 Mo. App. 549; Curtis' Law of

Electricity, secs. 594-597; Joyce on Electric Law, secs. 445-A, 445-F. (b) The instruction was further erroneous in submitting to the jury the question whether there was a direct contact between the Kinloch telephone wire and the defendant's wire—meaning an actual physical contact between the two wires. The instruction was properly refused, because there was no evidence of any such contact, and it would, therefore, have been error to submit to the jury the question as to whether or not there was such a contact. There was no such issue in the case. To inject such an issue would have been confusing and misleading to the jury. Where an instruction is wrong in one particular it is proper to refuse it, even if it is correct in all other respects. It is not incumbent on the trial court to correct such instruction. Davis v. Springfield Hospital, 196 S. W. 108; State to use v. Donnelly, 9 Mo. App. 530.

*Jourdan, Rassieur & Pierce* for respondent.

(1) In reviewing an order granting a new trial, the Supreme Court will consider not only the grounds upon which the order was made, but any other ground of the motion for new trial that will sustain the ruling. Benjamin v. Railroad, 245 Mo. 598, 609. (2) The petition charges specific negligence, in that defendant failed to insulate its wires with proper insulating material. Having thus pleaded specific negligence, plaintiff must recover on the specific negligence alleged or not at all, and cannot recover on *res ipsa loquitur.* Pointer v. Mountain Ry. Construction Co., 269 Mo. 104. (3) The cases cited by plaintiff go no further than to hold that when it is proven that defendant's electricity escaped, then the presumption is that it escaped through defective insulation, but before the presumption arises it must first be shown by substantial evidence that defendant's electricity escaped. Geisman v. Mo. Electric Co., 173 Mo. 654; Von Treba v. Gas Light Co., 209 Mo. 648; Sudmeyer v. United Rys. Co., 228 S. W. 64. (4) Where

there is no direct contact with defendant's wire, but plaintiff seeks to prove that defendant's electricity escaped and was communicated to his person through other agencies, the burden is upon plaintiff to prove by substantial evidence a channel or conduit through which electricity according to its laws could pass. Brown v. Consolidated Light, Power & Ice Co., 137 Mo. App. 729; Campbell v. United Rys. Co., 243 Mo. 141, 155; Vessels v. Light & Power Co., 219 S. W. 80; Downs v. Telephone Co., 161 Mo. App. 274. (5) While the escape of electricity may be shown by circumstantial evidence, there must be direct evidence of facts or circumstances which naturally support the inference. The jury cannot guess that the current came from defendant's wire merely because the evidence shows no other source from which it could come. Book v. Mo. Public Utilities Co., 242 S. W. 434; Brown v. Consolidated Light, Power & Ice Co., 137 Mo. App. 729; McGee v. Railroad, 214 Mo. 530, 543. (6) The rules of evidence do not permit a presumption to be rested upon a presumption. To so pyramid inferences is to rest a shadow upon a shade. Hamilton v. Railroad, 250 Mo. 714, 723; Whitesides v. Railroad, 186 Mo. App. 608, 621. (7) Where the petition charges that defendant failed to perform its duty in view of physical facts constituting an alleged dangerous condition, proof of notice to defendant, actual or constructive, of the alleged dangerous condition is an essential element of the plaintiff's case, without proof of which plaintiff cannot recover. Strack v. Telephone Co., 216 Mo. 601, 616; Meeker v. Union Electric, 216 S. W. 931; Davenport v. Electric Co., 242 Mo. 111, 121; Campbell v. United Rys. Co., 243 Mo. 144, 155; Brown v. Light, Power & Ice Co., 137 Mo. App. 718. (8) In failing to require the jury to find notice, actual or constructive, instruction numbered 1 omitted an essential element of the liability, and is therefore erroneous. Cases supra; also Delfosse v. United Rys. Co., 201 S. W. 862. (9) For the same reason, refused instruction numbered 5 embodied a sound defense, to-wit, want of notice, and its refusal was error. Cases

supra. (10) Instruction numbered 1 was also erroneous, in that it directed a verdict for plaintiff if the jury found that defendant had failed to exercise the highest care, whereas the petition only charged defendant with failure to exercise ordinary care. The issues as made by the pleadings must be followed in the instructions. Arata v. Street Ry. Co., 167 Mo. App. 90; Allen v. Lumber Co., 182 Mo. App. 287; Hufft v. Railroad, 222 Mo. 286, syl. 4; Degonia v. Railroad, 224 Mo. 564, syl. 5. (11) The verdict is excessive. Hulse v. Ry. Co., 214 S. W. 155; Ritel v. Souther Iron Co., 127 Mo. App. 463; Huston v. Railroad, 151 Mo. App, 336; Richardson v. Railroad, 223 Mo. 325, 346; Hosheit v. Lusk, 190 Mo. App. 446; Campbell v. United Rys. Co., 243 Mo. 141, 158; Davenport v. King Electric Co., 242 Mo. 111; Phippin v. Railroad, 196 Mo. 321; Young v. Lusk, 268 Mo. 625, 640; Johnson v. Waverly Brick & Coal Co., 276 Mo. 42, 57. (12) The verdict is so grossly excessive as to indicate passion or prejudice on the part of the jury, and requires that a new trial be granted. Partello v. Railroad, 217 Mo. 645; Finnegan v. Railroad, 261 Mo. 481, 512; Harper v. Railroad Co., 172 S. W. 55.

JAMES T. BLAIR, J.—This is an appeal from an order granting a new trial after judgment for appellant in his action for damages for injuries resulting from burns he suffered when a wire charged with electricity fell upon him in the yard adjoining the house in which he was living with his parents.

The second amended petition, upon which the case was tried, alleged, among other things, that respondent maintained upon poles in the alley back of the Grzeskoviak residence wires "charged with a heavy voltage of electricity" and that this current rendered these "wires extremely dangerous unless properly and securely insulated so as to prevent the escape of electricity from them;" that the Kinloch Telephone Company maintained the line of poles in the alley upon which the mentioned wires of respondent were maintained and also main-

tained telephone wires upon the same poles in such close proximity to respondent's wires that there was "danger at all times that the current of electricity" upon respondent's wires "would escape from its wires and come in contact with the telephone wires of said telephone company;" that one of the telephone wires extended from the poles in the alley in the rear of the residence of appellant's father across the lot on which that residence was situated; that this telephone wire was so placed and maintained "that it was likely to fall and conduct a dangerous current of electricity from the defendant's said electric wires into the yard and upon the grounds of the premises so occupied by the plaintiff's father and his family;" that on and long prior to October 27, 1918, all these facts were "well known to the defendant, or by the exercise of ordinary care on its part would have been known to it long prior to said date, and that by reason of said facts and circumstances above set forth, it was necessary for the defendant, in order to avoid injury to persons likely to come in contact with said Kinloch Telephone Company's telephone wire, to keep the defendant's said electric wires at all times safely and securely insulated so as to prevent the escape of electricity therefrom;" that "neglecting its duty in said behalf, the defendant, on the 27th day of October, 1918, and long prior thereto, negligently failed to keep its said wires insulated with proper and safe insulating material, and, as a result of the negligence of the defendant in neglecting and failing so to keep said wires insulated, a strong and dangerous current of electricity escaped from its said wires, on said 27th day of October, 1918, and into the telephone wire of said Kinloch Telephone Company, above mentioned, and that on said day said telephone wire fell and came in contact with  .  .  . the plaintiff, who was in the back yard of the premises occupied by his father and family,  .  .  .  causing a strong current of electricity to pass from said wire into the plaintiff's body,  .  .  .  and inflicting upon him" injuries which are particularly described. The prayer is for $50,000.

The evidence tends to show that respondent maintained in the alley back of 4943 Thurston Avenue, appellant's father's place of residence, three low-tension wires attached to insulators upon a cross-arm fastened to a Kinloch telephone pole; that these wires led out from a transformer attached to a pole about one hundred feet north. Into this transformer ran one of respondent's high-tension wires which carried a current with a voltage of about 2300. The function of the transformer was to "step down" the high-tension current to a voltage of 110 and pass it into the low-tension wires which served the homes along the line with electric current. The transformer had theretofore been observed to be leaking. The telephone poles which carried the low-tension wires also carried telephone wires. A guy wire ran from a point eight or ten feet high on the pole back of No. 4943 to the cross-arm on the pole upon which the transformer was attached or suspended. The transformer and the electric wires were a part of respondent's system. From a bracket on the pole in the alley back of 4943 two Kinloch telephone wires led across the corner of the yard in which No. 4943 stood to a house on the adjoining lot to the south. They were attached to a bracket on the residence. During the night of October 26-27, there had been a rain fall of nearly one inch. The poles and ground were wet. There was a high wind which had blown during the night and was blowing about fifty miles per hour at the time appellant was hurt. The evidence tends to show that winds of the sort were not unusual in the sense that they had not occurred before or were not to be expected on occasions. A little after noon appellant and several other persons were in the yard at 4943, and the evidence tends to show that one of the telephone wires across the corner of the yard parted and that part, the end of which was still attached to the pole in the alley, fell upon appellant and he was thereby shocked and burned. The jury returned a verdict of $28,500. The trial court ruled upon the motion for new trial as follows:

"I am of the opinion that I committed error in giving instruction numbered 1, at the request of plaintiff, for the following reasons: The second amended petition, on which the case went to trial and was tried, held the defendant to the exercise of ordinary care only, and for that reason Instruction No. 1 enlarges the issues made by the pleadings, and is, therefore, erroneous. I am also of the opinion that the court committed error in refusing to give to the jury Instruction No. 5 offered by defendant. In view of the foregoing, it will not be necessary to discuss the question whether or not the verdict was excessive. I am of the opinion that the verdict was somewhat excessive, but if that had been the only ground urged by the defendant for a new trial, that could have been cured by ordering plaintiff to enter a *remittitur.* For the foregoing reasons defendant's motion for a new trial will be sustained."

Instruction numbered 1, to which the court referred, informed the jury that if they found certain facts "then the plaintiff is entitled to recover, unless you find from the greater weight of the evidence that said defendant could not have prevented the escape of said electric current by the exercise of the highest degree of care of a very prudent person engaged in the business of transmitting electric current under the circumstances."

Instruction 5, which the respondent offered and the court refused, deals with the question of notice to respondent of defective conditions, if any.

The evidence tended to show that the shock rendered appellant unconscious. From this state he recovered about the time a physician, who had been promptly summoned, arrived at the home. Appellant was found to be suffering from a severe shock. His heart was thereby rendered weak, for the time, and he had several bad burns. He ultimately lost about one-half of the second and third fingers of the left hand. There were burns on the palm and back of the left hand and on the left wrist. This hand had not developed equally with the right hand since the injury and its usefulness was very considerably impaired by weakness, the loss of parts of two fingers

and the interference of scar tissue with the movement of the portion of the hand which remained. Appellant's hands were examined and compared before the court and jury. The burns on the abdomen, back and leg were severe, but had healed and were no longer painful. Appellant was in the hospital three or four days and was confined to his bed at his home only a few days. He was unable to leave the house for a considerable time. The burns were acutely painful for two or three weeks after the injury and had to be dressed for two or three months. The shock rendered him nervous for a time, and the evidence tends to show he was still somewhat so at the time of the trial. The burn on the boy's side was about the size of the palm of the hand; that on the abdomen was about two inches square; and that on the leg was "probably an inch and a half." The scar tissue will interfere with the nutrition of the left hand and it will never become as strong as the other hand. It "cannot be built up." The hand is not useless, however. Appellant's general health has not been affected, according to his physician. He was not disfigured otherwise than stated.

Several questions raised are based upon the state of the pleadings and the use of particular words in the instructions and upon testimony ambiguous in its nature, i. e. like the testimony, unexplained, of appellant that he noticed the transformer was "leaking." Since the case must go back on an affirmance of the order for any reason, there is no need to discuss those questions which easily can be eliminated on a retrial.

The trial court did not put its order on the ground that the verdict was excessive. Ordinarily this would put the burden upon respondent, if it relied upon the excessiveness of the verdict to sustain the order, to show that excessiveness despite the trial court's finding against it. That is because the trial court, with the witnesses before him, has found against the claim that the verdict is excessive. In this case the trial court found as a fact that the verdict was excessive. In examining the claim of respondent that the verdict is excessive, this finding of the court is to

be taken as true unless the evidence shows the contrary at least clearly enough to make out an abuse of discretion. It is apparent that no such showing is made by the evidence in this case. This court is in no position to weigh the evidence on this point and overturn the finding made by a trial court which had the injured person before it. Neither can this court, were this the only valid ground for new trial, order a *remittitur* here, according to a recent decision of Court in Banc. [Gaty v. United Rys., 286 Mo. 503.] In any event, the judgment on an appeal from an order granting a new trial in an action at law must either order the reinstatement of the verdict and judgment thereon, or must affirm the trial court's order and remand for the new trial which has been granted.

In the circumstances, we are of the opinion that the question of excessiveness of the verdict requires an affirmance and remandment, and also of the opinion that the other questions, since a new trial is granted, can be, in the main, eliminated. The contention that the evidence is not sufficient to take the case to the jury could be decided, in the circumstances, solely on the assumption that the evidence is to be the same on the next trial. This assumption we are not required to make. The point will be left open. The order is affirmed and the case remanded. All concur.