## Ex parte FRANK L. ALEXANDER, Petitioner.

**Kansas City Court of Appeals, May 13, 1912.**

1. **HABEAS CORPUS: Notary Public: Power to Commit Witness.** A notary public has power to commit to prison witnesses, who attend when summoned before him, and refuse to give evidence which may lawfully be required to be given.

2. **NOTARY PUBLIC: Judicial Offices.** In taking depositions a notary public acts as a temporary substitute for the court in which the cause is pending, and hence is a judicial officer.

3. ———: **Statutory Power: Limit of Authority.** The authority of a notary to take depositions being of statutory origin, the scope of such authority will not be enlarged by implication, but is strictly defined by the statutory limits.

4. ———: **Depositions: Limits of Inquiry.** The germane issues of the cause are not fixed by the state of the pleadings at the time depositions are taken and the subjects of proper inquiry are those that pertain to the subject-matter of the action and not merely those that are encompassed by the pleadings.

Original Proceeding. Habeas Corpus.

WRIT DENIED.

*Martin O'Donnell* for petitioner.

JOHNSON, J.—The petitioner alleges that he is unlawfully deprived of his liberty by the respondent, the sheriff of Jackson county. The return of the sheriff alleges that the petitioner is in his custody under a writ of commitment issued by Paul R. Spicer, a notary public of Jackson county. The main question for decision is the validity of the writ.

The day before that on which the petition for a writ was presented, an original proceeding for a writ of mandamus was filed in this court entitled: "State of Missouri at the Relation of General Accident, Fire & Life Assurance Corporation, Limited, Petitioner, v. John M. Rood, Sheriff, Respondent." It was al

leged in the petition in that suit that on April 10, 1912, a commitment was issued by Paul R. Spicer, a notary public, and delivered to the sheriff commanding that officer to seize and imprison Frank L. Alexander on account of his refusal to give testimony as a witness at the taking of depositions in a cause pending in the circuit court of Jackson county, wherein Edward J. Lamport is plaintiff and the General Accident, Fire & Life Assurance Corporation, Limited, is defendant and that the sheriff had failed and refused to obey the command of the writ. The prayer was that a writ of mandamus be issued commanding the sheriff to imprison the contumacious witness in obedience to the commitment. An alternative writ of mandamus was issued by one of the judges of this court returnable April 29, 1912, and, as stated, the following day, Alexander presented his petition for a *habeas corpus.*

The writ was issued and on the appearance of the sheriff with the prisoner I set the cause for hearing on the return day of the writ of mandamus. The two causes were heard together on April 29th. On that date the sheriff and the prisoner appeared in court and the sheriff filed a return in each case. In the return to the alternative writ of mandamus he admitted he had not obeyed the command of commitment issued by the notary but alleged that he was intending to obey it when prevented from so doing by the service on him of the writ of *habeas corpus.* I have already stated the substance of the return to the *habeas corpus.* Alexander filed an answer to the latter return and the relator in the mandamus suit filed a motion to quash the return in that action on the ground that it interposes no defense but in effect is a confession of the cause pleaded in the petition and alternative writ. Oral evidence was introduced at the hearing and the cause is submitted on that evidence and the pleaded facts that stand admitted. I shall

state the material facts as nearly as possible in their chronological order.

Edward J. Lamport was injured by a street car in a manner necessitating the amputation of his left arm near the wrist. He was president and manager of the Lamport Roofing Company, a corporation doing a small business in Kansas City. Alexander was assistant cashier of a bank in Kansas City with which Lamport and the corporation had transacted business and also was a stockholder and officer of the corporation. Lamport and the roofing company were pecuniarily embarrassed. Within a few days preceding his injury Lamport procured policies of insurance from various companies insuring him against accidental death in the aggregate sum of $57,500, and against accidental loss of a hand in the sum of $26,500. Two of these policies were issued by the relator August 7, 1911, three days before the injury. One of the other policies was procured by Lamport on the day of his injury. It is the contention of relator that the injury was not accidental but was intentional and that the facts of Lamport's small resources, pecuniary distress and his act in procuring insurance immediately before his injury in an amount far beyond his capacity to carry were relevant to the issue of whether or not the injury was accidental or intentional. The policies provided for the payment of indemnity only in cases of accidental injury and in his petition in the action on the policies he alleged that his injury was caused by accident. Relator filed an answer in that suit pleading only a general denial.

During the pendency of the action the attorney of the defendant therein prepared a notice in due form for the taking of depositions at their office in Kansas City on April 3, 1912, and presented the notice to the attorney of Lamport who under date of April 1st signed an acceptance of service in the following form: "Service of the above notice is hereby acknowledged

and issue of *dedimus* and all exceptions as to time waived and it is hereby agreed that the depositions may be taken in shorthand, then transcribed and signed.''

Paul R. Spicer, a notary public, was called by the attorneys of the insurance company to take the depositions and it does not appear that Lamport offered any objection to him. It is contended by counsel for Alexander who was counsel for Lamport at the taking of the depositions that Spicer was interested in the action in some way, but this contention is unsupported by proof and is finally dismissed. Pursuant to the notice the parties met at the appointed time and place and Lamport, who appeared voluntarily in response to an oral notice that he would be examined, was sworn as a witness for the insurance company and was interrogated until late in the afternoon. Counsel for the insurance company wished to continue the examination the following day but Lamport's counsel demurred on the ground of having court engagements that would prevent his attendance.

The trial of the cause was near and counsel of the company insisted on proceeding without a break until the depositions were concluded. The lawyers could not agree and during the controversy Lamport and his lawyer left the room hurriedly. They were followed into the hall by the notary who told Lamport to return the following morning. Lamport did not return and the notary at the request of the insurance company issued an attachment for him and gave it to an officer to be served. Lamport could not be found and the taking of the depositions was delayed on account of his absence.

On April 5th the notary at the request of the insurance company issued a subpoena for Frank L. Alexander commanding him to appear forthwith and give testimony. The subpoena was duly served but Alexander did not appear until the next day. He was

sworn as a witness for the insurance company and was asked questions the obvious purpose of which was to elicit testimony relating to the pecuniary condition of Lamport at the time of his injury. Under the advice and instructions of Lamport's attorney the witness refused to answer any of these questions which were numerous and covered a wide range. It was the idea of the attorney that the issue of whether the injury was accidental or intentional was not raised by the pleadings; that Lamport's financial condition was wholly extraneous to the pleaded issues and that the witness could claim as a privilege exemption from testifying to the indebtedness, if any, of Lamport to the bank of which the witness was an officer. Finally the notary at the request of counsel for the insurance company committed the witness to jail for contempt ''there to remain without bail until said Frank L. Alexander shall give such evidence, or until he be discharged by due course of law.'' Other facts will be mentioned in the course of the opinion.

Section 6356, Revised Statutes 1909, provides that any party to any civil action may compel any adverse party to testify as a witness in his behalf in the same manner and subject to the same rules as other witnesses. This statute bestowed the right on the insurance company to have Lamport called to the witness stand and I think it is wholly immaterial that he appeared without a subpoena. He voluntarily submitted to be sworn and examined and became a witness for all lawful purposes regardless of whether he came to the stand in obedience to a subpoena or of his own volition. An adjournment became necessary before his examination was concluded and he was legally bound to appear at any reasonable and lawful time fixed by the notary for the resumption of the examination. The delays in the taking of the deposition that were caused by Lamport's failure to reappear or by his lawyer's engagements in court did not have the

effect of invalidating further proceedings under the notice which, if valid when served, was in full force at the time the subpoena for Alexander was issued and served. Nor did the failure of Alexander to appear at the time commanded in the subpoena have the effect to put a period to further proceedings. He was acting under the advice and direction of Lamport's attorney and it would be a most unjust rule that would allow a party to take advantage of obstructions he interposes to the prompt completion of depositions being taken under the notice of the adverse party.

It is argued by the petitioner "that the commitment is void on its face since it shows that the notice under which the notary was proceeding was not served on plaintiff or his attorney three days before the commencement of the deposition as the statute requires" and, further, that "the statutes of Missouri in so far as they essay to give power to notaries public to imprison witnesses for refusal to answer questions when depositions are being taken before them are invalid."

The statutes provide that any party to a suit pending in any court in this state may obtain the deposition of any witness, to be used in such suit conditionally (section 6384) that depositions may be taken by a notary public (section 6387) under a commission (section 6388) or without a commission and on notice (section 6390); that notice shall be given by the party at whose instance the depositions are taken and served on the adverse party or his attorney of record (section 6392) at least three days before the day of taking the depositions (section 6396) and that "every person, judge or other officer of the state required to take the depositions or examination of witnesses, in pursuance of this article, or by virtue of any commission issuing out of any court of record in this or any other government, shall have power to issue subpoenas for witnesses to appear and testify, and to

compel their attendance, in the same manner and under like penalties as any court of record of this state. Any person summoned as a witness in virtue of the provisions of this article and attending, who shall refuse to give evidence which may be lawfully required to be given by him, on oath or affirmation, may be committed to prison by the officer or person authorized to take his deposition or testimony, there to remain without bail until he gives such evidence, or until he be discharged by due course of law.''

These statutes have been on the books many years and so far as I am advised this is the first occasion on which the validity of the provision giving power to the officer taking the depositions to punish recalcitrant witnesses has been questioned. Counsel contend that such power may be exercised only by a constitutional court and that since the Constitution (section 1, article 4) clothes notaries public with no judicial functions or powers, the Legislature is without authority thus to clothe them. I am referred to cases in other jurisdictions that support this argument but without going into a discussion of the question I decide it against the position of the petitioner on the ground that in a long line of decisions beginning with the case of Ex parte McKee, 18 Mo. 599, the Supreme Court has held repeatedly that notaries public have the statutory power to punish for contempt, and I shall not attempt to cast a doubt on a settled rule of such long standing by discussing a question that should be presented to a court that has jurisdiction over constitutional questions. If the petitioner desires a ruling on that point he should take it to the Supreme Court. I do not mean to be understood as holding that a judge of this court has no power to determine a constitutional question in a *habeas corpus* proceeding but I am saying that I will not pass on the validity of a statute that has been treated as valid by the Supreme Court for more than half a century.

In Ex parte McKee, supra, Judge Gamble said: "A notary public, then, being authorized to take depositions, and having the same powers for that purpose as are conferred on justices of the peace may summon a witness before him and enforce his attendance, if he fails to attend; and if he attends, and refuses to give evidence which may lawfully be required to be given, the notary may commit him to prison until he give the evidence."

This rule was approved in Ex parte Munford, 57 Mo. 603; Ex parte Priest, 76 Mo. 229; Ex parte Gfeller, 178 Mo. 248; Ex parte Brockman, 233 Mo. 135; Ex parte Livingston, 12 Mo. App. 80; Gharst v. St. Louis Transit Co., 115 Mo. App. 403. In the case last cited it was said: "It has been held that in taking depositions a notary public acts as a temporary substitute for the court in which the cause is pending and hence is a judicial officer." That he has the power to commit a contumacious witness to jail until he purges himself of contempt is not a debatable proposition in this state, and I pass to the question of whether or not the notary had legal authority to take these depositions under the notice in evidence.

The rule that there are no intendments in favor of the jurisdiction of inferior courts and that no matters will be held to be within their jurisdiction, except where they expressly appear to be so, applies with special force to proceedings by them to punish for alleged contempt; such proceedings being arbitrary no presumption will be indulged in their support. [Ex parte O'Brien, 127 Mo. 477.] This rule calls for a close inspection of all of the proceedings leading to the commitment and should it appear that in any essential particular they were out of conformity with the requirements of the statutes the commitment should be held invalid. The authority of a notary to take depositions being of statutory origin the scope of such authority will not be enlarged by implication

but is strictly defined by the statutory limits. The petitioner attacks the notice on the ground that it shows on its face it was not served on Lamport's attorney of record three days before the date fixed for taking the depositions and that the statutes (section 6396) require that such notices "shall be served at least three days before the day of taking the depositions." The petitioner relies on the decision of Judge LEWIS in the case of In re Nitsche, 14 Mo. App. 213, in which he held that "a notary public has no power to take depositions in a proceeding pending in another state until he has received a *dedimus* from such other state." But that rule applies only to depositions taken in cases pending in a foreign jurisdiction and not to depositions taken in cases pending in domestic courts. No *dedimus* is required in the latter class of cases nor is a commission necessary. The statutes I have referred to allow depositions to be taken on notice and the provision that such notice must be served three days before the day set for taking the depositions is one that may be waived and the time may be shortened by the agreement of the parties. Lamport by his attorney expressly agreed in writing to shorten the time and neither Lamport, who was the adverse party, nor the petitioner, who is not a party to the suit, will be permitted to assail the notice on this ground.

At the time the notary subpoenaed the petitioner and when the petitioner appeared in response to the subpoena and was sworn as a witness the notary was invested with authority to take the depositions and it was the duty of the witness to answer all lawful questions propounded to him by the examining attorney.

But it is argued by the learned counsel for the petitioner that the questions propounded to the witness by the attorney of the insurance company were irrelevant to any pleaded issue and were an imperti-

nent effort to pry into the personal affairs of the witness as well as into irrelevant business relations of the bank, of which the witness is an officer, with the plaintiff Lamport.

It may be true, as counsel for the petitioner insists, that in an action on an accident policy the defense that the injury was intentional and not accidental is an affirmative defense that cannot be raised by an answer in the nature of a general denial. I do not find it necessary to decide that point. Theoretically the purpose of taking depositions is to preserve evidence that may not be available at the trial of the cause. The statutes relating to the amendment of pleadings are very liberal and afford either party an opportunity to amend his pleadings before or even during the trial. So far as the taking of depositions is concerned the germane issues of the cause are not unalterably fixed by the state of the pleadings at the time and the issues which may be made the subjects of proper inquiry are those that pertain to the subject-matter of the action and not merely those that are encompassed by the pleadings. The very marrow of Lamport's pleaded cause was that he had suffered an *accidental* injury. His right to recover depended on whether or not the injury was accidental and this fact was an integral part of the subject-matter of the cause as was the opposite fact, if existent, that the injury was intentional.

In the solution of the issue of the accidental or intentional infliction of the injury the intent that animated Lamport at the time is the all-important solvent. Under proper pleadings it would be proper for each party to adduce evidence of facts and circumstances from which the triers of fact might draw a reasonable inference of a proper or evil intent. I concede that mere evidence that a policy-holder was in pecuniary straits at the times he obtained the policy and suffered the injury of itself, would be no evidence

of an intentional injury, but such evidence, coupled with other facts and circumstances may form an important and powerful link in an evidentiary chain that will support a reasonable inference that the injury was self-inflicted. If, as counsel for the insurance company contend, Lamport was in a desperate situation in his financial and business matters and while in such condition procured accident insurance in an amount far in excess of his ability to carry, and in each instance obtained a policy that provided large indemnity for the loss of a hand and procured all of this insurance within a few days before the loss of his hand, and was injured under circumstances that bespoke negligence or carelessness or wantonness on his part, the jury certainly would be entitled to infer from such facts should they appear as the facts of the case that the injury was intentional and each fact I have mentioned would possess strong probative value in combination with the others. I hold the evidence was relevant to the subject-matter and, therefore, was a proper subject of inquiry. The witness in such cases is not the judge of what is relevant and irrelevant. It is his business to answer the questions propounded to him unless they invade his personal privilege as a witness. The question of the relevancy or propriety of the examination is for the court to determine and where a witness constitutes himself the judge of what is proper evidence he takes the risk of being adjudged in contempt and punished accordingly.

The rules I have stated thus are expressed in Ex parte McKee, supra: "Again, the officer who takes a deposition, and who may know the nature of the action, when he requires a witness, under the penalty of imprisonment, to answer a question propounded to him, does in effect decide that it is a proper question, and one sufficiently relevant to the issue to require an answer. The opinion of the witness, that the question

is irrelevant is entitled to no consideration. If that is his only objection to answering it, there can be no injury result to him from compelling him to answer. If a merely frivolous or impertinent question were asked of a witness, the officer taking the deposition might not feel himself called upon to compel an answer; but it would only be in a very plain case of impertinence, that he would undertake to decide that the witness should be allowed to avoid answering. The court in which the cause is pending will, at the trial, reject irrelevant evidence, and it would greatly detract from the value of our statutes, which authorize the taking of depositions, if the question of relevancy was to be raised before and decided by every justice of the peace or other officer, who takes a single deposition in the cause, when he cannot know the aspect which the case will probably assume at the trial. To allow the witness himself to pass upon the question of relevancy, and refuse to answer such questions as he thought irrelevant, would be to deprive the party of the testimony of every unwilling witness.''

Also pertinent is the following excerpt from the opinion in Ex parte Munford, supra: ''I find no escape from the conclusion that the suit of Turnbull and others v. Munford and others was pending, literally and within the meaning of the statute, when the notary sought to take the petitioner's deposition. The latter complains that the only object is to elicit facts from which to make a case against him. If this be so, it is a peril against which neither the constitution nor the statute has undertaken to protect him. It is well understood that a witness can never refuse to testify, on the ground that his testimony may render him liable to a civil action. In this case the witness is certainly no worse off than he would be if a petition were on file, legally sufficient on its face, and yet, in his estimation untrue and fictitious in all its allegations, and intended only as a snare. Would he claim, in the lat-

ter case, that the truth of the petition must first be established in order to authorize the taking of his deposition for the very purpose of establishing the same thing? Every man's knowledge of facts which may be material to the administration of justice is, subject to certain exceptions of personal privilege, the absolute property of the law, and may be demanded of him under the forms prescribed, without any reference to his convenience or his profit or loss.''

As to all other matters of inquiry in this proceeding, I consider them settled by the opinion of our Supreme Court in Ex parte McKee, 18 Mo. 599. After quoting from the several statutes relating to *habeas corpus,* witnesses and depositions, Judge GAMBLE proceeds to say: ''A notary public, then, being authorized to take depositions, and having the same powers for that purpose as are conferred on justices of the peace, may summon a witness before him, and enforce his attendance, if he fails to attend; and if he attends and refuses to give evidence which may lawfully be required to be given, the notary may commit him to prison until he give the evidence. As to what evidence 'may lawfully be required,' on such occasions, the court declares this to embrace every question 'which is not his *personal privilege* to refuse to answer.' ''

Other questions are argued but in what I have said I have disposed of the controlling issues of the case. The petitioner was without legal justification in his refusal to answer the questions, the commitment was lawfully issued, and I see no occasion to interfere with its execution. To purge himself of contempt the witness must appear and submit to an examination that may cover his knowledge of the financial condition of Lamport during the period in controversy. It is immaterial whether his knowledge came to him in the discharge of his duties as an officer of the bank or in some other way. A bank officer has no personal

privileges beyond those of other witnesses. He must tell what he knows if it pertains to the issues of the case. The writ is denied and the prisoner is remanded to the custody of the sheriff.