Lindy **STAFFORD**, Appellant,

v.

John **MUSTER**, Phillip **Eveloff**, H. C. **"Sonny" Myers** and Honorable **William H. Kimberlin**, Respondents.

No. 60468.

Supreme Court of Missouri, En Banc.

June 19, 1979.

Rehearing Denied July 17, 1979.

Irvin Achtenberg, Achtenberg, Sandler, Balkin & Hellman, Kansas City, for appellant.

Dan Hale, Strop, Watkins, Hoskins & King, St. Joseph, for respondents.

RENDLEN, Judge.

Plaintiff appeals, in an action for damages against a sheriff, two lawyers and a circuit judge, from the judgment dismissing her petition for failure to state a cause of action.[1] The question is whether the facts well pleaded, taken as admitted and construed favorably to plaintiff, show any ground for relief. *McDonough v. Aylward,* 500 S.W.2d 721 (Mo.1973). We hold plaintiff's claims for malicious prosecution and abuse of process are sufficiently stated but her claim for false imprisonment is barred by limitations and her civil rights claim does not lie.

John Stafford married Sarah Iveda and to that marriage a son, James Wallace Staf-

---

1. Plaintiff has not appealed the dismissal of her petition as to defendant Sheriff Myers. After the cause was transferred, this Court sustained the Honorable William Kimberlin's motion to dismiss upon notice from plaintiff's counsel that no brief in opposition to the motion would be filed.

ford, was born. John and Sarah were divorced in the circuit court of the City of St. Louis March 30, 1967, and legal custody of their son James was awarded to Sarah. John then married Lindy Stafford, plaintiff herein.

On July 20, 1971, John Muster and Phillip Eveloff, attorneys for Sarah Stafford, filed on her behalf a petition for writ of habeas corpus in the circuit court of Buchanan County, alleging that her minor son, James, had been illegally detained and deprived of his liberties since July 4 by John and Lindy Stafford at their home in Buchanan County. Sarah in her verified petition further stated that they refused to return the child to her as legal custodian under the decree of divorce.

The case, No. 95,412, was assigned to Division One and the Honorable William H. Kimberlin presiding issued a writ of habeas corpus to John and Lindy Stafford commanding them to bring James Stafford before the court. That writ was served on Lindy at 1:30 p. m., July 23, 1971, but service was not obtained on John. During the ensuing one and one-half hours, the only time afforded Lindy Stafford to make her return, Sarah and her attorneys were apparently preparing a verified application for writ of attachment alleging that John and Lindy Stafford refused or neglected to obey the writ of habeas corpus by failing to produce James Stafford and by failing to make a return within the time required, without sufficient excuse for such refusal or neglect.

The application was filed and immediately Judge Kimberlin issued an attachment ordering the sheriff to attach the bodies of John (who had never been served) and Lindy Stafford, to bring them immediately before the court and confine them until they complied with the writ of habeas corpus. Pursuant to the attachment Lindy Stafford was taken into custody by the sheriff shortly after 3:00 p. m. the same day and brought before the court where she was questioned in the first instance by Judge Kimberlin and then at length by defendant Muster. Lindy, who had requested but was denied the opportunity to be represented by counsel, stated she did not have James Stafford in her custody and did not know where he was. During the interrogation that followed she refused to answer a question as to the name of her parents' home town [2] and upon her refusal was sentenced to serve thirty days in the Buchanan County jail for contempt of court, though Lindy had "promptly purged herself of said contempt by stating . . . that the home town of the Strickland family was Healdton, Oklahoma." Lodged in jail over night, she was granted a stay of execution the following day and placed under bond.

On July 29, Lindy appeared with counsel before Judge Kimberlin for further interrogation and was questioned this time by defendant Eveloff. Asked to give her residence telephone number, she stated the phone had been disconnected. She was then asked the number before the disconnection and she refused to answer, whereupon she was again cited for contempt, her stay of execution terminated, and she was sentenced to an additional 30 days imprisonment to be served consecutively with the prior sentence. She was returned to jail and held there from July 29 to August 26 when a new stay of execution was granted "on the condition that she reports to the St. Louis Circuit Court or to any other court in connection with any hearing regarding the minor child James Stafford."

In 1972, Lindy Stafford made application to the Missouri Court of Appeals, Kansas City District, No. KCD 26440, for a writ of habeas corpus. On November 19 of that year, Judge Kimberlin moved to stay the application for writ of habeas corpus stating that Lindy Stafford was "not now in the custody of, nor restrained of her liber-

---

2. The particular allegation is as follows: "During the course of said illegal examination plaintiff refused to answer the questions 'Where is the home town of the Strickland Family?'. Whereupon a 'Commitment for Contempt' was illegally issued by defendant Kimberlin during said proceedings, and plaintiff was illegally and improperly sentenced by defendant Kimberlin to a term of 30 days in the Buchanan County Jail for contempt of court."

ty" by him. On December 4, 1972, the court of appeals issued its writ of habeas corpus to Judge Kimberlin as prayed by Lindy Stafford, for return January 5, 1973, "wherein you shall state any legal cause for your restraint of said Lindy Stafford." Judge Kimberlin made no further response. On January 12, 1973, the court of appeals entered an order declaring that the proceedings in the Buchanan County case no. 95,412 were "null, void and of no legal effect" and that Lindy Stafford "be absolutely discharged from the jurisdiction, custody and orders whatsoever of the respondent judge [Kimberlin] in case no. 95412."

Plaintiff thereafter brought this action for damages alleging that the proceedings in the 1971 Buchanan County habeas corpus action were illegal, null and void; that the Buchanan County circuit court was without jurisdiction to entertain the petition for habeas corpus; that each defendant knew at that time "that said minor child was not in the custody of plaintiff, nor being restrained by her"; that the writ of attachment was null and void; that defendants "individually and in concert procured, instigated, directed, participated in and/or affected the illegal and void acts herein set forth"; that the illegal and void acts were "knowingly and wilfully committed in violation of the laws"; and that all the proceedings "were procured by defendants maliciously, without reasonable or probable cause, without authority or law, and with intent to injure plaintiff." [3] The petition was dismissed by the trial court for failure to state a cause of action and plaintiff appeals contending that she has stated causes of action for malicious prosecution, false imprisonment, abuse of process, and violations of civil rights actionable under 42 U.S.C. § 1983 (1976), the Civil Rights Act of 1871.

Before examining the law pertinent to the various claims propounded, it should be noted the four separate processes issued by the court may each have given rise to an intentional tort. Those processes are the writ of habeas corpus of July 23, 1971, the writ of attachment of July 23, the first commitment for contempt on July 23 and the second commitment for contempt on July 29. Each must be addressed in the context of the separate intentional torts alleged.

## I. MALICIOUS PROSECUTION

■ The elements of an action for malicious prosecution are (1) the commencement or prosecution of the proceedings against the present plaintiff; (2) its legal causation or instigation by the present defendant; (3) its termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage by reason thereof. *Huffstutler v. Coates*, 335 S.W.2d 70, 73 (Mo.1960); *McFarland v. Union Finance Co.*, 471 S.W.2d 497, 499 (Mo.App. 1971).

■ As to the habeas corpus proceeding and writ of attachment, the petition clearly alleges facts satisfying these three referenced elements of malicious prosecution: (1) the commencement and continued prosecution of proceedings under the named writs, (2) defendants' causation or instigation of same, and (6) damages. The third named element, termination of the proceedings favorably to plaintiff, is sufficiently alleged in the petition by reference to the order of the court of appeals in plaintiff's 1973 proceeding against the circuit judge. Though the 1971 Buchanan County habeas corpus action could not be appealed, *E.W. v. K.D.M.*, 490 S.W.2d 64 (Mo. banc 1973), the legality of the judgment for contempt was a proper subject of inquiry by habeas corpus, *Hernreich v. Quinn*, 350 Mo. 770, 168 S.W.2d 1054 (banc 1943), which necessarily involved the question of the propriety of the original writs of habeas corpus and attachment. Plaintiff sought that means of obtaining relief in the appellate court through her own habeas corpus action. Her successful prosecution of that action satisfies the element requiring termination of the original action in her favor. The fifth

---

**3.** Portions of the petition relevant to the issues appear as an appendix to this opinion.

named element, malice, is adequately alleged by the statement, "All of the proceedings against plaintiff hereinabove set forth were procured by defendants maliciously, . . ." As Rule 55.15 provides, "Malice . . . and any other condition of mind of a person may be averred generally."

The fourth named element, want of probable cause, is our principal concern. Plaintiff alleges that at the time the habeas corpus petition was filed defendants "knew that said minor child was not in the custody of plaintiff, nor being restrained by her, . . ." Rule 91.16(1) and (4) require plaintiff to state in her return (had she been given time to file it) whether she then had the child in custody or at any time prior to "service of the writ." If so, and custody had been transferred to another then "the return shall state particularly to whom, at what time, for what cause, and by what authority such transfer took place." *Id.* Thus, under the facts stated in the petition, we see no lack of probable cause at the *commencement* of the action, because plaintiff's petition does not allege that defendants knew the child was *never* in Lindy Stafford's custody. Stated otherwise, defendants by habeas corpus could inquire into the cause of the child's restraint and further if the child's custody or restraint had been passed to another could inquire as to whom, at what time, for what cause and by what authority such transfer had been effected.

However, the petition alleges that after defendants had questioned her and from her answers knew she no longer had the child in custody and that she did not know his whereabouts, defendants continued to question her and subjected her to another round of questioning six days later beyond the scope of legitimate inquiry as to matters she would be required to state in her return. There was no probable cause to continue the habeas corpus proceedings in such circumstances.

Nor was there probable cause to apply for a writ of attachment under the facts alleged in plaintiff's petition. Rule 91.19 provides that a writ of attachment shall issue "[i]f the officer, or person upon whom the writ of habeas corpus shall be duly served, shall *refuse* or *neglect* to obey the same, by producing the party named in the writ, and by making a full and explicit return to such court, within the time required by these rules, . . ." (Emphasis added.) If the child were not in Lindy Stafford's custody, as plaintiff alleged, she could not have refused or neglected to obey the writ of habeas corpus. Her only duty under the writ was to make a return and it not appearing that any exigency required the court in its discretion to shorten the time allowed for the return, she should have been allowed the "time required by these rules," Rule 91.19, to make such return.[4] Rule 91.15 allows twenty-four hours but in this instance the writ of attachment issued one and one-half hours after the writ of habeas corpus was served. Accordingly, the petition alleges a lack of probable cause to seek the writ of attachment.

Turning now to the two contempt commitments as they relate to malicious prosecution, it appears the petition sufficiently alleges the commencement of those proceedings against plaintiff, the termination in favor of plaintiff by reason of the relief granted to her under her writ of habeas corpus in the court of appeals, the presence of malice, and damages. However, we need to carefully examine the effect of the petition's allegations as to named elements (2) and (4), i. e., (2) instigation of the contempt proceedings by defendants and (4) the lack of probable cause for such instigation.

The element of legal causation, or instigation, must be met in this case by pleading

---

4. As discussed in *State ex rel. O'Connell v. Nangle*, 280 S.W.2d 96, 99 (Mo. banc 1955), the court under § 532.170, RSMo 1949 (now governed by Rule 91.15) is not required to allow the maximum time for return authorized by the law and while this general proposition is correct and the court may in its discretion shorten the time, it apparently did not so do. If the evidence develops otherwise, plaintiff would have the burden of demonstrating an abuse of judicial discretion.

facts from which the conclusion follows that defendants' actions were the proximate cause of the contempt proceedings. *Hunter v. Karchmer*, 285 S.W.2d 918, 929 (Mo.App.1955). We cannot say that the facts averred in the petition before us reflect that the first commitment for contempt was instigated, in the context here, by defendants Muster or Eveloff. The petition states only that Lindy Stafford was asked a particular question, refused to answer and was committed for contempt. Plaintiff does not state defendants sought contempt sanctions. The most that can be said inferentially supportive of plaintiff's claim as to this moment in the proceeding is that defendants knowingly asked an irrelevant question, improperly fishing for information. Though we do not so hold, it might be arguably said that defendants instigated her contumacious action, if such it was. Nevertheless, the trial court's unsolicited reaction was not legally foreseeable so as to support a conclusion that defendants instigated that contempt citation. Stated otherwise, while the pleadings perhaps imply that defendants contemplated her refusal to answer the immaterial question asked, nevertheless the facts alleged do not lead to the conclusion these defendants anticipated the judge would impose contempt sanctions sua sponte. Thus they cannot be held under the facts pleaded here to have been the legal cause (i. e., instigation) of the first commitment for contempt.

■ Plaintiff has pleaded, however, that defendants and the judge acted in concert throughout these proceedings. Under this theory the petition does satisfy the instigation element as it relates to the contempt commitment, for the law "is well settled that joint liability exists where the wrong is done by concert of action and common intent and purpose, provided that the act of each person was an efficient cause, contributing to the injury. Proof of a conspiracy is not necessary." *Haynie v. Jones*, 233 Mo.App. 948, 959, 127 S.W.2d 105, 111 (1939). If the proof shows joint action by the judge with defendants, the judge's instigation of the first contempt commitment suffices; otherwise, what we have just said

above concerning the foreseeability of the judge's actions precludes the maintenance of malicious prosecution for the first contempt commitment.

■ Our conclusion as to foreseeability must be different regarding the second contempt commitment, for in that instance the defendants could well have anticipated the second contempt order. They again brought Lindy Stafford to court on July 29, 1971, within 6 days after Judge Kimberlin had earlier found her in contempt for refusing to answer an irrelevant question in the same vein as that to which they intended to and did seek answer on July 29. A party may be held liable for a result he knows is a natural and probable consequence of his acts, even if the voluntary act of another contributes to the result. 86 C.J.S. *Torts* § 28d(4) at 945 (1954). In view of the prior behavior of Lindy Stafford and Judge Kimberlin in a situation which defendants intended to re-create on July 29, we conclude the "legal causation" or instigation element of malicious prosecution was pleaded as to the second contempt commitment because the result was then foreseeable.

The alternative theory of action-in-concert also permits the "legal causation" or instigation element to be satisfied in relation to the second commitment.

■ Finally we examine whether there was probable cause to initiate the contempt commitments. The court has the power to punish as criminal contempt of court the "contumacious and unlawful refusal . . . to answer any *legal and proper interrogatory.*" § 476.110(5), RSMo 1969 (emphasis added). Another statute provides that a witness "who shall refuse to give evidence *which may lawfully be required to be given by such person,* on oath or affirmation, may be committed to prison by the court, . . . there to remain, without bail, until he gives such evidence." § 491.200 (emphasis added). As we have determined above, the questions plaintiff refused to answer do not appear to be "legal and proper" questions nor do they appear to be questions she was

"lawfully required to answer." We do not here say that plaintiff is the judge of the legality of the questions propounded, for "The question of the relevancy or propriety of the examination is for the court to determine, and, where a witness constitutes himself the judge of what is proper evidence, he takes the risk of being adjudged in contempt and punished accordingly." *Ex parte Alexander*, 163 Mo.App. 615, 625, 147 S.W. 521, 525 (1912). In this case, however, plaintiff alleges defendants acted in these proceedings with malice, that is, knowing they were wrongful. Hence the inference favorable to plaintiff we must draw from the pleadings is that defendants, charged with knowledge of the law, knew that they were asking questions plaintiff could not lawfully be required to answer. This knowledge establishes a basis for the charge of lack of probable cause in the initiation of contempt proceedings against plaintiff. In summary, plaintiff then has alleged instigation of the first commitment for contempt under the action-in-concert theory and has alleged instigation of the second commitment for contempt under either theory discussed above, and her petition satisfies the element of the absence of probable cause in relation to the commitments for contempt. Hence a claim for malicious prosecution for the contempt commitments is stated.

We find, then, the petition states facts satisfying the elements of malicious prosecution as to the continued prosecution of the habeas corpus proceeding, the initiation and continued compulsion of the writ of attachment by defendants, and the commitments for contempt. This is not to say that the damages are separate as to each. The damages flowing from Lindy Stafford's arrest under the writ of attachment are unique, because at that point there was yet no improper prosecution of habeas corpus proceedings, but the damages resulting from having been thereafter subjected to improper questioning under habeas corpus became the same as those sustained from being compelled by the attachment to attend and remain in court up until that time. Injuries arising from the imprisonment for contempt deserve recompense if they represent the natural and probable consequences of the malicious prosecutions, *Foley v. Union House Furnishing Co.*, 228 Mo.App. 1063, 60 S.W.2d 725 (1933). We will hereafter treat the issue of damages in more detail.

## II. ABUSE OF PROCESS

A pleading alleging abuse of process must set forth ultimate facts establishing the following elements: (1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted. *National Motor Club of Missouri v. Noe*, 475 S.W.2d 16, 24 (Mo.1972). The petition sufficiently alleges that damages resulted; accordingly we need inquire only if it states facts satisfying the remaining elements of the action.

The phrase "use of process," appearing in element (1) above, refers to some wilful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process. W. Prosser, Torts, § 121, at 857 (4th ed. 1971), cited in *Moffett v. Commerce Trust Co.*, 283 S.W.2d 591, 599 (Mo.1955), *cert. denied*, 350 U.S. 996, 76 S.Ct. 547, 100 L.Ed. 861 (1956). Because Rule 91.16(4) requires one on whom the writ of habeas corpus is served to state "to whom, at what time, for what cause, and by what authority" a child was transferred if at some previous time the child was in the person's custody, it follows that using the writ to seek such information represents a proper use. The case cited by plaintiff arising from facts entirely different than those before us does not compel an opposite conclusion. *Application of Cutting*, 316 F.2d 516 (8th Cir. 1963). However, Rule 91.16 provides no authority, under the circumstances alleged, for employing habeas corpus to question a plaintiff concerning the address of her parents or her former telephone number and it was her refusal to answer these

questions which precipitated the contempt citations and imprisonment. We need not decide whether Rule 91.16 exhausts all legitimate subjects of inquiry; however, the petition before us alleges that defendants used the writ to interrogate plaintiff as to matters beyond the scope of the proper inquiry under the rule. In the circumstances pleaded, these allegations state sufficient facts which if proved would support the issue of improper use of the writ.

■ Furthermore, while the writ of attachment may be employed to procure compliance with the writ of habeas corpus, Rules 91.19–.20, there is no authority for continuing to compel one's attendance in court under a writ of attachment after one has complied with the writ of habeas corpus as fully as required by the rule. Thus not only does the petition allege the absence of probable cause to seek a writ of attachment that relates to the claim for malicious prosecution discussed above, it also alleges a wrongful use of the writ, sufficient to state a claim for abuse of process.

■ Similarly, the contempt proceedings were employed by the judge to compel Lindy Stafford to answer questions which defendants had no right to put to her under the circumstances pleaded, and the judge clearly intended to use them for that improper purpose. The use of contempt and the purpose of the judge may be imputed to defendant-attorneys because the petition alleged a concert of action among all defendants. American law uniformly holds the acts of one joint tortfeasor are imputable to his fellows. 86 C.J.S. *Torts* § 34, at 949 (1954). *See, e. g., Wetherton v. Growers Farm Labor Assn.,* 275 Cal.App.2d 168, 79 Cal.Rptr. 543 (1969); *Goodyear Tire & Rubber Co. v. Johnson,* 120 Ga.App. 395, 170 S.E.2d 869 (1969); *American Family Mut. Ins. Co. v. Grim,* 201 Kan. 340, 440 P.2d 621 (1968); *Sickles v. Potts,* 29 Ohio App.2d 195, 280 N.E.2d 658 (1971); *Huckeby v. Spangler,* 521 S.W.2d 568 (Tenn.1975).

■ We conclude the petition states a cause of action for abuse of process as to all the processes (habeas corpus, attachment, two contempt citations) employed in the original proceedings but reiterate the caveat that duplicate or overlapping damages may not be obtained.[5]

## III. RECOVERY

■ For the guidance of those involved in further proceedings, it should be noted that this petition sets forth several claims stemming from a single set of occurrences with a single series of damages. Should plaintiff adduce sufficient proof of liability at trial, she may recover but once for the injuries she has sustained. *See Frampton v. Bieber,* 204 S.W. 728 (Mo.1918) (false imprisonment and malicious prosecution); *Boeger v. Langenberg,* 97 Mo. 390, 11 S.W. 223 (1889) (same). Of course, plaintiff may ask recovery for such harm, including the commitments for contempt, of which she can prove defendants were the legal cause, Restatement (2d) of Torts §§ 435A & 435B

---

5. This Court's ruling on the common law torts alleged in the particular petition at bar should not be construed as an expansion of the grounds upon which to attack attorneys in their practice of law or a diminution of their professional responsibility. The Code of Professional Responsibility, adopted as Supreme Court Rule 4, requires each member of the Bar "to seek the lawful objectives of his client through reasonably available means permitted by law." Rule 4, DR 7–101(A)(1). However, the law in Missouri has long been that attorneys have no immunity from suits for malicious prosecution and false imprisonment founded on acts they have taken as lawyers, *Henderson v. Cape Trading Co.,* 316 Mo. 384, 289 S.W. 332 (1926) (malicious prosecution); *Tiede v. Fuhr,* 264 Mo. 622, 175 S.W. 910 (1915) (false impris-

onment); *Peck v. Choteau,* 91 Mo. 138, 3 S.W. 577 (1887) (malicious prosecution), and American jurisdictions seem uniformly to hold that attorneys have no special immunity from actions claiming abuse of process. *Lambert v. Breton,* 127 Me. 510, 144 A. 864 (1929); *Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780 (1947); *Board of Education v. Farmingdale Classroom Teachers Assn.,* 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975); *Dishaw v. Wadleigh,* 15 App.Div. 205, 44 N.Y.S. 207 (1897); *Adelman v. Rosenbaum,* 133 Pa.Super. 386, 3 A.2d 15 (1938). A license to practice law does not permit the commission of intentional torts. *Cf.* Rule 4, DR 7–102(A)(1). *See generally,* Note, *Sanctions Imposed by Courts on Attorneys Who Abuse the Judicial Process,* 44 U.Chi.L.R. 619, 636–39 (1977).

(1965);[6] *Bouillon v. Laclede Gaslight Co.*, 148 Mo.App. 462, 129 S.W. 401 (1910), or for which they are responsible as joint tortfeasors with former defendant Kimberlin, *State ex rel. Hall v. Cook*, 400 S.W.2d 39 (Mo. banc 1966).

## IV. FALSE IMPRISONMENT

 Defendants have raised the statute of limitations as a bar to plaintiff's claim for false imprisonment. Section 516.-100, RSMo 1969, provides in part, "Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued, . . ." Section 516.140 prescribes a period of two years for commencing "An action for . . . false imprisonment." The general rule in Missouri is, "The time begins to run under a statute of limitations only after the right to prosecute a claim to a successful conclusion has accrued." *Beckers-Behrens-Gist Lumber Co. v. Adams*, 311 S.W.2d 70, 74 (Mo. App.1958). And for false imprisonment in particular, the authorities overwhelmingly hold that a cause of action for false imprisonment accrues on the discharge from imprisonment. *Belflower v. Blackshere*, 281 P.2d 423 (Okl.1955); Annot., 49 A.L.R.2d 922 (1956) and Later Case Service at 79–81 (1978).

 Appellant argues that false imprisonment would not lie until a court determined the imprisonment was illegal; therefore, the cause of action did not accrue until after the court of appeals ordered release of Lindy Stafford from the remaining custody exercised over her by Judge Kimberlin on January 12, 1973. Appellant's contention is not well taken. Nothing in *Davis v. Chicago, R.I. & P. Ry.*, 192 Mo.App. 419, 182 S.W. 826, 828 (1916) (cited by appellant), or any other Missouri case we can find requires a judicial determination of the illegality of a physical restraint before false imprisonment lies. Furthermore, the argument that her imprisonment did not end until the court of appeals granted relief, despite her release from jail on August 26, 1971, fails. This Court has held that a prisoner on bail or parole cannot claim the benefit of the statutory exception to the statute of limitations given to those imprisoned for criminal offenses, *Jepson v. Stubbs*, 555 S.W.2d 307 (Mo. banc 1977); *Hyde v. Nelson*, 287 Mo. 130, 229 S.W. 200 (1921), and we see no reason the claim for false imprisonment occurring in this case should be governed by different principles.

 Finally, the language in § 516.100 which reads, "[F]or the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done . . . but when the damage resulting therefrom is sustained and capable of ascertainment, . . ." does not save plaintiff's claim, for her damages were capable of ascertainment when she was released from the Buchanan County Jail. Any damages accruing as a result of whatever restraint the final stay of execution imposed were reasonably capable of determination then because the conditions were set forth in the judge's order. In *Jepson*, this Court faced a situation in which plaintiff was sentenced on September 8, 1967, to three years in custody of the United States Attorney General for refusal to submit to induction into the armed forces. On March 4, 1969, he was placed on parole, and on September 7, 1970, he was discharged from parole. We held plaintiff's cause of action for malpractice against his attorney accrued March 4, 1969, 555 S.W.2d at 312: "At that time plaintiff knew and was in a position to show to the jury that his actual imprisonment continued until March 4, 1969, and that he would be on parole for the remain-

---

**6.** Section 435A states, "A person who commits a tort against another for the purpose of causing a particular harm to the other is liable for such harm if it results, whether or not it is expectable, except where the harm results from an outside force the risk of which is not increased by the defendant's act." Section 435B states, "Where a person has intentionally invaded the legally protected interests of another, his intention to commit an invasion, the degree of his moral wrong in acting, and the seriousness of the harm which he intended are important factors in determining whether he is liable for resulting unintended harm."

der of his term, subject to whatever terms thereof were specified. Plaintiff has not suggested anything affecting the elements or extent of his damage which could have been proved September 7, 1970, which could not have been proved on March 4, 1969." *Jepson* is sufficiently analogous to control on the meaning of § 516.100 as it applies to the facts of this case.

Lindy Stafford was released from the Buchanan County Jail under the second stay of execution on August 26, 1971. This petition was filed July 16, 1974. For these reasons the statute of limitations has barred plaintiff's claims for false imprisonment and that claim was justifiably dismissed.

## V. CIVIL RIGHTS VIOLATIONS

We now reach the final cause of action, founded on 42 U.S.C. § 1983 (1976).[7] As we recently ruled in *Shapiro v. Columbia Union National Bank & Trust Co.*, 576 S.W.2d 310 (Mo. banc 1978), claims under § 1983 are properly cognizable in the courts of Missouri. A petition for relief based on § 1983 must allege facts in support of two elements: (1) deprivation of rights secured by the Constitution or laws of the United States, (2) "under color of" state law or custom. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). No allegation of a specific intent to deprive a person of a federal right need be made or proved. *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

We find the pleading in the cause sub judice fails as a matter of law to satisfy the second element required for actions under § 1983. Although attorneys may act as "officers of the court," they do not act "under color of" state law by that fact alone. *See, e. g. Harley v. Oliver*, 539 F.2d 1143 (8th Cir. 1976); *Kregger v. Posner*, 248 F.Supp. 804, 806 (E.D.Mich.1966).

Plaintiff attempts to hurdle this difficulty by asserting defendants acted in concert with the judge and sheriff, since under *Adickes* private individuals can be liable pursuant to § 1983 for joint actions with state officials. The great weight of federal authority holds that § 1983 actions do not lie against individuals who allegedly have acted in concert with a judge who enjoys immunity for his actions. *E. g., Kurz v. Michigan*, 548 F.2d 172, 175 (6th Cir.), *cert. denied* 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462 (1977); *Sykes v. California*, 497 F.2d 197, 202 (9th Cir. 1974); *Guedry v. Ford*, 431 F.2d 660, 664 (5th Cir. 1970); *Brown v. Dunne*, 409 F.2d 341, 344 (7th Cir. 1969); *Haldane v. Chagnon*, 345 F.2d 601, 604–05 (9th Cir. 1965). *Contra, Slotnick v. Staviskey*, 560 F.2d 31 (1st Cir. 1977), *cert. denied* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978); *Kermit Construction Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1 (1st Cir. 1976). This Court adopts the majority view.

Plaintiff's allegation that defendants acted in concert with the sheriff of Buchanan County does not save her § 1983 claim, for the petition does not allege facts on which the sheriff could be found liable for a violation of federal civil rights. The sheriff's only alleged participation in the events of 1971 consisted of taking plaintiff into custody by virtue of the writ of attachment. No allegation is made that the writ was improper on its face and the sheriff's clear duty was to obey the command of the writ. Thus the sheriff under the facts averred in this petition cannot be liable for violating the federally-guaranteed right against unreasonable seizures and accordingly it cannot be said that defendants' alleged action in concert with the sheriff constitutes such a violation. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Link v. Greyhound Corp.*, 288 F.Supp. 898, 901 (E.D.Mich.1968);

---

**7.** Section 1983 was enacted as part of the Civil Rights Act of April 20, 1871, and reads,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Quinnette v. Garland,* 277 F.Supp. 999 (C.D. Cal.1967).

Having found no state action, we hold the count praying relief under 42 U.S.C. § 1983 (1976) was properly dismissed.

For the foregoing reasons the judgment of the circuit court of Buchanan County is reversed in part and affirmed in part, and the cause is remanded for further proceedings not inconsistent with this opinion on plaintiff's claims remaining against defendants Eveloff and Muster.

SEILER, J., and FINCH and HOUSER, Senior Judges, concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

MORGAN, C. J., and BARDGETT, J., dissent and concur in separate dissenting opinion of DONNELLY, J.

SIMEONE and WELLIVER, JJ., not participating because not members of the Court when cause was submitted.

### APPENDIX

#### Count I

\* \* \* \* \* \*

7. On July 20, 1971 defendants Muster and Eveloff filed in behalf of said Sarah Iveda Stafford a purported petition for a Writ of Habeas Corpus against John R. Stafford and Lindie [sic] Stafford, Case No. 95412 in Division 1 of the Circuit Court of Buchanan County, Missouri, alleging that a minor, James Wallace Stafford was illegally restrained by plaintiff herein and her husband, said John R. Stafford, which petition was illegal and null and void against plaintiff since defendants and each of them knew that said minor child was not in the custody of plaintiff, nor being restrained by her, and for the further reason that such proceedings in child custody cases are not for the purpose of freeing the child from some illegal restraint or imprisonment, as in the ordinary issuance of the Writ, but instead is directed toward securing an adjudication as to proper custody of the minor child.

At the time of the filing of the above purported petition for a Writ of Habeas Corpus, there was pending in the Circuit Court of the City of St. Louis, Missouri, Juvenile Division, Case # 77915–E in which John R. Stafford was plaintiff and Sarah Iveda Stafford was defendant and the question of the custody of the minor child James Stafford was among the issues then pending before said court. The custody of said minor child was also in issue in the related case before said court, Juvenile Division, Case No. 86790. For said further reason the Circuit Court of Buchanan County, Missouri lacked jurisdiction to determine custody rights and related matters with regard to said minor child, the Circuit Court of St. Louis, Missouri having assumed prior jurisdiction of the matters therein. All defendants herein were advised and were aware of the pendency of such court proceedings in St. Louis Missouri.

8. Thereafter on July 20, 1971 defendant Kimberlin then sitting as Circuit Judge of said Division, issued ex parte a purported Writ of Habeas Corpus, in response to said petition, against plaintiff and John R. Stafford, which Writ, as against plaintiff was beyond the jurisdiction of said Judge because of the reasons above set forth.

9. Said Writ of Habeas Corpus was first served on plaintiff at 1:30 P.M. on July 23, 1971.

10. On July 23, 1971, defendants Muster and Eveloff prepared and filed a verified application with defendant Kimberlin seeking to have said defendant issue a Writ of Attachment against plaintiff herein.

11. In response to said application defendant William H. Kimberlin issued a purported Writ of Attachment to defendant Myers, who was then the Sheriff of Buchanan County, Missouri, on July 23, 1971.

12. Under and by virtue of said Writ of Attachment and by order of defendant Myers, plaintiff was taken into custody by a Deputy Sheriff of Buchanan County at 3:00 P.M. on July 23, 1971, and less than two hours after said Writ of Habeas Corpus was served on plaintiff.

13. Said purported application for a Writ of Attachment, said Writ of Attachment and the taking of plaintiff into custody by said sheriff, under order of said judge, were all unlawful, illegal and null and void in that:

(a) Said Court had no jurisdiction to issue said Writ of Attachment.

(b) Although under the laws of the State of Missouri, Supreme Court Rules 91.14 and 91.15, plaintiff was entitled to twenty four hours (or until 1:30 P.M., July 24, 1971) within which to make a return to said Writ of Habeas Corpus and under Missouri Supreme Court Rule 91.19, no such Writ of Attachment was authorized until the time within which said return was authorized, had expired; such period of twenty four hours had not expired when said application for said Writ of Attachment was filed, nor when said Writ of Attachment was issued, nor when plaintiff was taken into custody.

(c) Said application for a Writ of Attachment and said Writ were further illegal and void in that they incorrectly and improperly alleged that "respondents have refused and neglected to obey said Writ by producing James Wallace Stafford" whereas as defendants and each of them well knew, plaintiff did not have custody of said James Wallace Stafford and therefore could neither refuse nor neglect to produce said child.

(d) Said application and said Writ of Attachment were further illegal and void in that they improperly, wrongfully and illegally alleged that plaintiff had failed to make a Return to this Court within the time required: whereas, in fact, as defendants and each of them well knew, under the law of Missouri the time within which to make such a Return had not yet expired.

14. Thereafter on July 23, 1971 and in violation of plaintiff's rights as herein set forth, plaintiff was taken by defendant Myers before defendant Kimberlin and without authority of law, a purported court proceeding was conducted at the request of defendants Muster and Eveloff in which plaintiff was questioned and examined under oath by defendant Muster.

15. Said purported court proceedings and examination of plaintiff were further illegal and null and void in that:

(a) There is no authority under the law of Missouri for such a court proceedings [sic] and examination and said court had no jurisdiction to order or conduct the same.

(b) Plaintiff stated under oath during said examination that she did not have said James Wallace Stafford in her custody or under restraint, nor did she know where he was.

(c) Plaintiff requested and was denied the opportunity to be represented by counsel.

16. During the course of said illegal examination plaintiff refused to answer the questions "Where is the home town of the Strickland Family?". Whereupon a "Commitment for Contempt" was illegally issued by defendant Kimberlin during said proceedings, and plaintiff was illegally and improperly sentenced by defendant Kimberlin to a term of 30 days in the Buchanan County Jail for contempt of court.

17. Said Commitment for Contempt was illegal and null and void for the following reasons? [sic]

(a) The aforesaid Application for Writ of Attachment, the Writ of Attachment issued thereunder, the taking of plaintiff into custody and the questioning and examination of plaintiff were all unauthorized by any law and were illegal and void and defendant Kimberlin had no jurisdiction thereof.

(b) Said question was not relevant or material to any issue allegedly involved in said proceedings.

(c) Plaintiff was not represented by legal counsel.

(d) Said commitment does not state whether it is for civil or criminal contempt, as required by Supreme Court Rule 35.01. However in a letter from defendant Kimberlin to Judge Theodore McMillian of the Circuit Court, St. Louis, Missouri, dated

September 17, 1971, defendant Kimberlin stated he jailed plaintiff for civil contempt.

(e) Whether said commitment was for civil or criminal contempt, plaintiff promptly purged herself of said contempt by stating to defendant Kimberlin immediately after said sentence was imposed and in the presence of the defendant Kimberlin, the Clerk of the Court, the bailiff and defendant Muster, that the home town of the Strickland family was Healdton, Oklahoma, thereby fully answering said question and purging herself of said contempt, if any had occurred.

(f) Said commitment was further deficient in that defendant Kimberlin failed to certify, as required by Supreme Court Rule 35.01, that he "saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court".

(g) Plaintiff was further entitled to be represented by legal counsel in a contempt proceeding in which the punishment involves imprisonment, under the most recent relevant decision of the United States Supreme Court, and was entitled to be advised of her right to be released on bond and given the opportunity to make bond, all of which were denied her.

(h) The conduct of plaintiff did not, as a matter of law, constitute contempt of court.

18. Thereafter on July 23, 1971 plaintiff was illegally imprisoned in the Buchanan County Jail under Custody of defendant Myers, by reason of said illegal and void order.

19. On July 24, 1971 plaintiff being then still confined in the custody of defendant Myers appeared in Court with legal counsel and was granted a Stay of Execution until July 27, 1971, under the requirement of a bond, which was provided by plaintiff.

20. On July 29, 1971 plaintiff appeared before defendant Kimberlin in accordance with the request of defendants Muster and Eveloff and the order of defendant Kimberlin and was again illegally and improperly examined and questioned by defendant Eveloff, in a purported legal proceeding.

21. Said purported proceedings of July 29 were illegal and null and void for the same reasons as the proceeding [sic] examination as hereinabove set forth.

22. During said proceedings of July 29, 1971 plaintiff was questioned by defendant Eveloff as to the phone number of her residence, to which she answered that it had been disconnected and, upon being further questioned as to the number before it was disconnected, refused to answer the question, whereupon defendant Kimberlin issued a "Citation for Contempt" against plaintiff sentencing plaintiff to an additional 30 days in jail, terminated the Stay of Execution on the prior illegal Commitment for Contempt and ordered that the sentences be served consecutively; whereupon plaintiff was again taken into custody by defendant Myers and confined by him in the Buchanan County Jail.

23. Said "Citation for Contempt" of July 29, 1971 was illegal and void for all of the reasons set forth hereinabove with respect to the Commitment for Contempt of July 23, 1971.

24. Thereafter on August 19, 1971 after plaintiff had been committed to jail and had served 24 days in said jail, a Motion for Stay of Execution was filed in her behalf.

25. Said motion was heard by defendant Kimberlin on August 26, 1971, at which time plaintiff had served 31 days in confinement.

26. At said hearing on August 26, 1971 defendant Kimberlin issued a purported order granting plaintiff a Stay of Execution "on the balance of her sentence on the condition that she reports to the St. Louis Circuit Court or to any other court in connection with any hearing regarding the minor child James Stafford".

27. That said order of defendant Kimberlin on August 26, 1971 was also null and void and of no legal effect, and defendant Kimberlin had no jurisdiction to issue the same.

28. On January 12, 1973 the Missouri Court of Appeals, Kansas City District in

Cause No. KCD 26440, "In the Matter of Lindy Stafford, Petitioner v. The Honorable William H. Kimberlin, Judge of the Circuit Court of Buchanan County, Missouri, Respondent" held as follows:

"IT IS ORDERED AND ADJUDGED that the order of the respondent judge, the Honorable William H. Kimberlin, issued on the 23rd day of July, 1971 for the attachment of Lindie Stafford for failure to obey the Writ of Habeas Corpus in Case No. 96412 [sic] be and is hereby declared null, void and of no legal effect, and

That the proceedings conducted before the respondent judge on the 23rd day of July, 1971, in pursuance of the writ of attachment unlawfully issued, and the judgment for contempt of court, the commitment thereon and the stay of execution of judgment be and are hereby declared null, void and of no legal effect, and

That the further proceedings conducted before the respondent judge on the 29th day of July, 1971, in pursuance of the writ of attachment unlawfully issued, and the judgment for contempt of court, the commitment thereon and the conditional stay of execution of judgment entered on August 28, 1971, be and are hereby declared null, void and of no legal effect, and

That the petitioner Lindy Stafford, known before and to the respondent judge as Lindie Stafford, be absolutely discharged from the jurisdiction, custody and orders whatsoever of the respondent judge in case No. 95412." Said order is a final judgment and there has been no appeal therefrom.

29. Defendants and each of them individually and in concert procured, instigated, directed, participated in and/or affected the illegal and void acts herein set forth.

30. Defendants and each of them are officers of the courts of Missouri and charged with knowledge of the laws of Missouri.

31. The above illegal and void acts of defendants were knowingly and wilfully committed in violation of the laws of Missouri and of the United States and by reason thereof plaintiff was denied due process of law guaranteed her by the Constitutions of the United States and of the State of Missouri.

32. All of the proceedings against plaintiff hereinabove set forth were procured by defendants maliciously, without reasonable or probable cause, without authority of law, and with intent to injure plaintiff.

33. By reason of the acts of defendants and each of them plaintiff suffered loss of earnings, severe bodily and mental pain, was deprived of her liberty, was required to incur substantial legal and other expense, and was humiliated and embarrassed to her actual damage in the sum of One Hundred Thousand ($100,000.00) Dollars.

34. Because the acts of defendants and each of them were wilful, knowing and malicious and without authority of law, plaintiff is entitled to punitive damages.

*Count II*

1. Plaintiff incorporates herein and makes a part hereof, as though fully set forth herein all allegations of paragraphs 1–34 of Count I hereof.

2. Plaintiff is a citizen of the United States.

3. This count is based upon the deprivation by defendants and each of them, under color of state law, of plaintiff's rights, privileges and immunities under the United States Constitution and particularly the First, Fifth and Fourteenth Amendments thereto and the violation by defendants of 42 U.S.C. 1981 and 1983, and the Missouri Constitution.

4. Plaintiff by the acts of defendants and each of them has been denied liberty and property guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Missouri.

5. The frequent denials by the defendants of the fundamental procedural rights of plaintiff throughout the proceedings in Cause No. 95412 also constitute a denial of procedural due process guaranteed by the

Constitution of the State of Missouri and the Fifth and Fourteenth Amendment to the United States Constitution.

6. The defendants and each of them have purposefully subjected plaintiff, a citizen of the United States, to deprivation of rights, privileges and immunities guaranteed her by the Constitution and laws of the United States.

7. Defendants Myers and Kimberlin were at all times herein mentioned state officials and defendants Muster and Eveloff acted in concert with said officials.

DONNELLY, Judge, dissenting.

The principal opinion holds plaintiff's claims against defendants Muster and Eveloff for abuse of process and for malicious prosecution are sufficiently stated. I do not agree and would affirm the judgment of dismissal of all counts. I adopt portions of the opinion prepared for the Western District of the Missouri Court of Appeals by Andrew Jackson Higgins, Special Judge, which follow without the use of quotation marks.

The elements to sustain an action for abuse of process are: (1) that the defendant made an illegal, improper, perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted from the irregularity. *National Motor Club of Missouri, Inc. v. Noe*, 475 S.W.2d 16, 24 (Mo.1972).

Plaintiff's petition does not demonstrate that defendant lawyers made an illegal, improper or perverted use of process in the habeas corpus proceeding. The writ of habeas corpus is properly employed to procure custody and possession of a minor child where the parent to whom custody was awarded is enforcing such award. *In re Wakefield*, 365 Mo. 415, 283 S.W.2d 467, 471–472 (banc 1955); *In re R. L. K.*, 508 S.W.2d 232 (Mo.App.1974). This is so even though another court may have concurrent

jurisdiction where the purpose of the writ is not to interfere with the other court's jurisdiction but to properly secure custody pending any change of custody under consideration. *In re L. G.*, 502 S.W.2d 33 (Mo.App. 1973). The writ of attachment is properly employed to secure compliance with the writ of habeas corpus. See Rule 91.19, which provides that if a person upon whom a writ of habeas corpus is served refuses or neglects to obey the same within the time prescribed without excuse shown, an attachment for his person shall issue commanding his apprehension and immediate delivery to the court. And although Rule 91.15 provides that return to a writ of habeas corpus shall be made within 24 hours, return may be required forthwith or immediately; the court is not required to allow the maximum time for return. *State v. Nangle*, 365 Mo. 198, 280 S.W.2d 96, 99 (banc 1955).

The elements of an action for malicious prosecution are: (1) the commencement or prosecution of the proceedings against the present plaintiff; (2) its legal causation by the present defendant; (3) its termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage by reason thereof. *McFarland v. Union Finance Co.*, 471 S.W.2d 497, 499 (Mo.App.1971); *Huffstutler v. Coates*, 335 S.W.2d 70, 73 (Mo.1960).

Plaintiff's petition does not demonstrate that defendant lawyers acted in absence of probable cause and with malice. Attorneys have the right to act and advise upon information the client reveals to them. Nothing short of complete knowledge on the part of the attorneys that the action is groundless and that the client is acting solely for illegal or malicious motives should make them liable for their actions. *Peck v. Chouteau*, 91 Mo. 138, 3 S.W. 577, 581 (1887). See also *Henderson v. Cape Trading Co.*, 316 Mo. 384, 289 S.W. 332 (1926). The client has a duty of inquiry prior to institution of suit, *Stubbs v. Mulholland*, 168 Mo. 47, 67 S.W. 650 (1902); but failure of the client to do so does not give rise to a cause of action against the attorneys who act on the infor-

mation given them, *Peck v. Chouteau*, supra.

Appellant argues that the foregoing principles of law do not apply to defendants because the petition alleges that they "knew" that the child was not in plaintiff's custody, "knowingly and wilfully" acted in violation of law, and "maliciously, without reasonable or probable cause" acted with intent to injure plaintiff. The habeas corpus action and the aiding writ of attachment had, for their foundation, facts verified by Sarah Iveda Stafford; and defendants' actions therein did not, as previously shown, expose them to actions for abuse of process and malicious prosecution. Plaintiff's allegations that defendants' actions were knowing, wilful, or malicious are but conclusions which are not admitted by a motion to dismiss and are not facts supportive of inferences. *Pretsky v. Southwestern Bell Telephone Co.*, 396 S.W.2d 566, 569–570 (Mo.1965); *Tolliver v. Standard Oil Co.*, 431 S.W.2d 159 (Mo.1968).

I respectfully dissent.